THE STATE ex rel. SALINE COUNTY, Appellant, v. STERLING T. PRICE and EQUITABLE SURETY COMPANY.

Division One, December 18, 1922.

1. **SHERIFF: Compensation: Reduction by Statute: Constitutional.** The provision of the Constitution (Sec. 13, Art. 9) that "the fees of no executive or ministerial officer of any county or municipality

State ex rel. Saline County v. Price.

. . , shall exceed the sum of ten thousand dollars for any one year" does not fix the amount of the total compensation of such officers or the amount of fees they may retain, but simply fixes a maximum limit which the Legislature cannot exceed, and the general statutes (Secs. 11036 and 11037, R. S. 1919) fixing the compensation of a sheriff at five thousand dollars in any one year in no wise transgress said constitutional provision.

2. ———: ———: **Board of Prisoners.** The moneys received by the sheriff from the county for boarding prisoners in his charge as jailer are not fees for which he can be charged as a part of his compensation allowed by the statute. Where the statute fixes his compensation at five thousand dollars per annum, the sheriff, after deducting from the total amount of fees received the amount paid by him for deputy hire, may retain said sum of five thousand dollars, and in addition is entitled to be paid by the county "such sum" as is allowed by the order of the county court for each prisoner boarded by him as jailer, which is only the State's method of re-imbursing him for the expense of feeding and housing its prisoners.

3. ———: ———: **Fees.** The word "fee" used in Section 11003, Revised Statutes 1919, requiring the county court to make an order "fixing the fee" to be allowed the sheriff "for furnishing board for each prisoner, each day," is not used in the same sense as the word "fees" used in Section 11036, declaring that "the fees of no executive or ministerial officer of any county, exclusive of the salaries actually paid to his necessary deputies, shall exceed the sum of five thousand dollars for any one year." The word "fee" as used in said Section 11003 means "such sum," to be paid by the county, as the county court, under Section 11002, may, by prior order, allow the sheriff "for furnishing each prisoner with board, for each day," and such sum is not to be counted as a part of his compensation of five thousand dollars authorized by said Section 11036.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis, Judge.*

AFFIRMED.

*A. R. James* and *R. M. Reynolds* for appellant.

(1) The defendant Sterling T. Price was entitled to keep and retain as his compensation for each year

during his term of office out of the fees earned for such year by him and collected during his term, the sum of five thousand dollars after deducting the amount paid out by him for such year for deputy hire, provided the fees so earned during such years and collected during such term were sufficient therefor. If such fees were not sufficient for such purpose, he was entitled, after deducting amounts paid for deputy hire, to whatever remained for such year. If such fees were equal to an amount in excess of the deputy hire and said sum of five thousand dollars so to be retained by him thereof, then he was required to pay such excess into the county treasury. Secs. 10734, 10735, R. S. 1909; Secs. 11036, 11037, R. S. 1919; Callaway County v. Henderson, 119 Mo. 39; Callaway County v. Henderson, 139 Mo. 510; State ex rel. v. Henderson, 142 Mo. 598, 606; Scott County v. Leftwich, 145 Mo. 26; State ex rel. v. Chick, 146 Mo. 645, 654; State ex rel. v. Gideon, 158 Mo. 327, 337. (2) In determining the amount thus to be retained by the defendant or any excess required by him to be paid into the county treasury, it was necessary that he should report all of the fees by him received and from whatever source derived. Callaway County v. Henderson, 119 Mo. 39; Callaway County v. Henderson, 139 Mo. 510; State ex rel. v. Henderson, 142 Mo. 598, 606; Scott County v. Leftwich, 145 Mo. 26; State ex rel. v. Chick, 146 Mo. 645, 654; State ex rel. v. Gideon, 158 Mo. 327, 337. (3) Not only was the defendant Price required to account for all said fees, but he was required to make and return quarterly statements to the county court of all fees by him earned and received, and of the salaries by him actually paid to his deputies, stating the same in detail and verifying the same by his affidavit. Sec. 10734, R. S. 1909; Sec. 11036, R. S. 1919; Sec. 13, Art. 9, Mo. Constitution. These reports he did not make as the law required, and in failing to do so, he committed breaches of his bond as set out in the petition. Callaway County v. Henderson, 119 Mo. 39;

Callaway County v. Henderson, 139 Mo. 510; State ex rel. v. Henderson, 142 Mo. 598, 606; Scott County v. Leftwich, 145 Mo. 26; State ex rel. v. Chick, 146 Mo. 654; State ex rel. v. Gideon, 158 Mo. 327, 337. (4) It is made by statute one of the duties of the sheriff of each county to have the custody, rule, keeping and charge of the jail within the county, and of all the prisoners in such jail, and while he may appoint a jailer under him, he remains responsible for such jailer. It is a part of his duty as sheriff to see that the prisoners are fed and all sums paid him by the county for the board of such prisoners are fees for which he must account. Secs. 1573, 10702, R. S. 1909. (5) "Fees are compensations paid for acts or services rendered by public officers in the line of their duty, as expressly designated and authorized by law; but, while this is true, as far as it goes, yet, where it appears that the schedule of fees and the statutes shall be in full for all services rendered by the officer in his official capacity, payments for any services which are rendered in his official capacity will be included in the term fees. A fee is a reward or recompense for work, labor, trouble or service and expenses incident." 3 Words & Phrases (1 Series) p. 2713; Calhoun County v. Henderson, 119 Mo. 32; Henderson v. Pueblo County, 4 Colo. App. 301. Besides the matter of declaring what should be considered and classed as fees for the sheriff's office or for any other county office was by the Constitution delegated to the Legislature. It became the duty of the Legislature to define and provide what should be fees. It has so declared, and has classified moneys received by sheriffs for board of prisoners, *per diem* received by sheriffs for attendance on courts of record and for the conveyance of prisoners to penitentiary, as fees, and where such has been done the character of such items is no longer open for question. Sec. 12, Art. 9, Mo. Constitution; Hennepin County v. Dickey, 86 Minn. 331; 3 Words & Phrases (1 Series) p. 2713; Henderson v.

Pueblo County, 4 Colo. App. 301; Callaway County v. Henderson, 119 Mo. 39. (6) The so-called quarterly returns reported to have been made by defendant Price were not such in fact, and cannot be so treated. They were not verified by the defendant sheriff's affidavit as required by the law, and neither did they contain and set out in detail all the fees collected by the defendant to the time of the making of each as required by law, but many of such fees were omitted therefrom, and besides they were only made now and then. The plaintiff county was not bound by any approval which the county court may have entered thereon. They are merely to be considered as admissions by the sheriff, as receipts to the county for so much money. Callaway County v. Henderson, 139 Mo. 510, 520; Scott County v. Leftwich, 145 Mo. 32; State ex rel. Christian County v. Gideon, 158 Mo. 327, 338.

*Harvey & Bellamy* for respondents.

(1) By the provisions of the statutes pertaining to salaries and fees of county officers, the defendant Price was entitled to receive and retain fees earned and collected by him for each year during his term of office in the sum of $5000, exclusive of the salaries paid to his necessary deputies during such year. Only in case such fees, exclusive of the amount paid his deputies, exceeded the sum of $5000, was he required to pay such excess into the county treasury. Secs. 10734 and 10735, R. S. 1909. (2) The amounts paid to defendant Price for boarding prisoners were not fees within the meaning of the above sections. These sections follow the provisions of Section 13, Article 9, of the Constitution of Missouri, and refer to the same subject-matter. This article of the Constitution deals with county officers and their compensation, and Section 12 thereof provides that the General Assembly by a law uniform in its operation, shall provide for and regulate the fees of all county officers. Section 10705, Revised Statutes 1909,

provides that the county courts shall fix a *per diem* allowance to the sheriff or other officers in charge of the county jail for the feeding of prisoners. Section 10740, provides that in counties of more than 150,000 inhabitants, the marshal shall present at the end of each month to the county court, all expenses incurred for that month in providing and causing to be furnished food to prisoners, and that the county court shall allow same and issue a warrant for the exact expenses so incurred in boarding prisoners. If board of prisoners is fees within the meaning of Sections 12 and 13, Article 9, of the Constitution, then there is a lack of uniformity between said Sections 10705 and 10740. (3) (a) The law gives fees as a compensation for services. Sayler v. Nodaway Co., 159 Mo. l. c. 523. (b) That an officer is oftentimes called upon to perform certain services, for which no compensation has been provided, and for which he can collect nothing, is no reason why he should be compelled to contribute his own means for the public welfare without recompense. Sayler v. Nodaway Co., 159 Mo. 524. And this he would be doing if the money he spent for food for prisoners were to be charged to his account as fees received by him. (4) One holding two separate and distinct, yet compatible offices, is entitled to the emoluments of both offices. State ex rel. v. Walker, 97 Mo. 162; Sec. 18, Art. 5, Mo. Const.; State ex rel. v. Adams, 172 Mo. 1; Senter v. State, 160 Ind. 605; In re Conrad, 15 Fed. 641. (5) The offices of sheriff and jailer are two separate and distinct offices under the laws of Missouri. Sec. 1596, R. S. 1909; Moutier v. Stumpe, 39 Mo. App. 164. The sheriff is *ex-officio* jailer of the county. Harkreader v. Vernon County, 216 Mo. 696. The sheriff can only be removed from his office by *quo warranto,* while the sheriff may be removed from the office of jailer by a mere order of the circuit court. Sec. 1596, R. S. 1909; State v. Yager, 250 Mo. 388. (6) By the provisions of Section 1580, Revised Statutes 1909, the sheriff or jailer is required

to provide its prisoners with food, and in certain emergencies, with fuel, clothes, medicine, and medical attention, and the provisions of said section say that he shall be allowed a reasonable compensation therefor. These latter necessities, outside of food, have been held to be compensation and not fees. Harkreader v. Vernon County, 216 Mo. 696.

BROWN, C.—This is a suit by the State of Missouri at the relation of Saline County, against Sterling T. Price, who was sheriff of said county during the years 1913 to 1916 inclusive, and the Equitable Surety Company, the surety on his official bond as such sheriff, to recover fees collected by him during his term in excess of $5000 per year, and not turned over to the county as provided by the statute, amounting in all to $9968.28.

The petition alleges that he had, during his term of office, failed in some instances to make returns to the county court of the full amount received by him, as required by law, and that some of the reports made by him were not verified by his affidavit and that others had not been signed.

The answer of Price pleads, in substance, that during all the time he was sheriff he was also jailer of said county in charge of the prisoners in the county jail, and was entitled to compensation for their board, which was annually fixed by the county court as provided by law, and that he included in his statements the moneys received on that account as well as sums received by him as compensation for his expense in taking prisoners to the Penitentiary at Jefferson City and to the Reformatory at Boonville, and also for taking insane patients to the state hospitals. It also pleads that Sections 10734 and 10735, Revised Statutes 1909, upon which the action is founded, are void because in violation of Section 13, Article 9, of the State Constitution, in that it seeks to change the amount of fees allowed by said section of the Constitution. It also pleads the three-year Statute of Limitations as a bar to the cause

of. action founded on the delinquency charged in 1913. In other respects it puts in issue the material allegations of the petition.

The defendant Surety Company filed a similar answer.

The parties entered into an agreed statement of facts, which it is unnecessary to copy in this statement, because counsel for appellant has, with commendable frankness, stated the issue as follows:

"Aside from the questions of the constitutionality of Sections 10734 and 10735, Revised Statutes 1909, raised by defendants in their answer and the plea of the Statute of Limitations, as a bar to the cause of action prosecuted in the fourth count of plaintiff's petition, by the Surety Company, in its answer, practically, the only questions left are, whether or not pay received by the sheriff from the county for board of prisoners in the county jail, and for his *per diem* in attendance upon courts of record in his county, and in conveying patients to asylums and prisoners to the Reform School and Penitentiary, are fees for which he is bound to account for the purpose of applying the limitation provided in Sections 10734 and 10735, Revised Statutes 1909, in determining the amount of fees which he may retain. If such are not among the fees for which he is required to account, then regardless of any other question in the case, the judgment of the court below should be sustained, but if they are such as he should account for, and said Sections 10734 and 10735 are constitutional, then the judgment should be reversed."

If it should become necessary in the course of our opinion to make any further computation of the amounts referred to in this statement we will refer to the agreed statement of facts for that purpose.

I. In citing the statutory provisions affecting the questions we shall consider, we will refer to the present edition (1919) where they are identical with those of the

previous edition under which this cause of action accrued; otherwise, we will refer to the earlier edition.

The first question confronting us in the record arises upon the contention of the respondent that Section 11036, Revised Statutes 1919, is unconstitutional, because it reduces the maximum compensation allowed to public officers, including the sheriffs of the several counties, to be paid out of the fees of the office, to $5,000 per annum, while Section 13, Article 9, of the Constitution fixes the maximum amount at $10,000.

Compensation of Sheriff: Constitutional Statute.

The constitutional provision referred to is as follows:

"The fees of no executive or ministerial officer of any county or municipality, exclusive of the salaries actually paid to his necessary deputies, shall exceed the sum of ten thousand dollars for any one year. Every such officer shall make return, quarterly, to the county court of all fees by him received, and of the salaries by him actually paid to his deputies or assistants, stating the same in detail, and verifying the same by his affidavit; and for any statement or omission in such return, contrary to truth, such officer shall be liable to the penalties of willful and corrupt perjury."

It will be seen that this provision applies to all executive and ministerial officers of the counties and municipalities of the State, and there is nothing in the words in which it is expressed that either fixes the amount of their total compensation or the amount which they may retain from the fees of their respective offices for such compensation. It is simply a limitation on the maximum amount of compensation which may be allowed them by the Legislature, without interfering with its right to confine the compensation of any one or all of them to what it may consider the actual value of the service rendered in the office. The theory of the provision seems to be that all fees are imposed by the State through its laws, and that when collected by its officers

they become the property of the State to be disposed of at its pleasure. This duty of collection may be and is performed by salaried officers, as well as by those depending upon the fees for their compensation, and in many instances they bear no relation to the service in- volved in connection with the matter to which they per-- tain. The prominent and only idea expressed in this constitutional provision is the protection of the State from unreasonable charges by ministerial and executive officers affected, and to provide for their compensation out of a fund created in the performance of their duties. The only limitation upon the legislative branch of the government, either expressed or implied is, as we have said, a limitation of the maximum amount of the compen- sation to be so paid. The provisions of Sections 11036 and 11037, Revised Statutes 1919, have no tendency to interfere with that purpose. This point must be ruled against the respondent.

II. The trial court held that sums received by the sheriff from the county for the board of prisoners in his charge as jailer, were not fees for which the defend- ant can be held to account, as a part of his compensation allowed by the statute. [Sec. 11036, R. S. 1919.] Section 12551, Revised Statutes 1919 provides that "the sheriff . . . shall have the custody, rule, keeping and charge of the jail within his county, and of all the prisoners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible." In this capacity it became his duty to see that the prisoners confined there were pro- vided with food, bedding and medical attention. Sec- tion 11003 makes it the duty of the county court at the November term of each year to fix the fee for furnishing each prisoner with board for each day during the fol- lowing calendar year. During the entire term of the defendant Price, the amount of this daily charge was limited to fifty cents, and the sheriff or jailer was for-

*Board of Prisoners.*

bidden to make any contract for the boarding of prisoners for a less sum.

From the agreed statement of facts it appears that unless the amount received by Price for the board of prisoners be charged against him in determining the amount which he was entitled to retain as his compensation, the amount which he did so retain in any year did not exceed the amount of $5,000 allowed him under the statutes. This is evidently the paramount question in this case, for the agreed statement shows, and the argument of both parties assumes, that the total amount of the receipts of Price, including the amount paid him for the board of prisoners, did not, after deducting that amount, and the amount paid by him for deputy hire, exceed the amount of $5000 which he was, by law, entitled to retain. In two of those years the amount received for board was greater than the amount retained as his compensation. Whether he realized any profit whatever in his capacity as a keeper of boarders does not appear in the record. It is not suggested that fifty cents per day was immoderate when fixed in 1913. The great war came on the very next year when millions of men were called from the fields where they helped to produce the world's supply of food, to the field of strife, where they became consumers, and some of the most fertile lands in western Europe were torn by shot and shell, so that no tickling by the plow could extort from them the laughter of the harvest. The price of foodstuffs mounted, but the Legislature acted slowly, and not until Price left the office and his successor entered, did it pass the Act of March 17, 1917, by which the maximum price of board at the jail was increased fifty per cent, and the sheriff forbidden to contract for the furnishing of such board for a less price than that fixed by the county court. We note, in passing, that the General Assembly, in the enactment of this law, evidently had no suspicion that it was violating the constitutional provision forbidding a change in the fees of the office during the term of the incumbent, and that it also had in mind

the theory that the sheriff should not be permitted to profit by contracting with others to perform this duty for less than he himself should receive. The humane intent which pervades this law is that the county court, in its capacity as the representative of the people of the county, should itself assume the duty of providing reasonable sustenance for prisoners through the officer charged with their custody, who should not be permitted to profit by the performance of that duty. While his fees for compensation for other services pertaining to his official duties were fixed by law, and protected by constitutional immunity from change during his term of office, his compensation for feeding prisoners remained under the control of the county court to be fixed annually as circumstances might indicate. Neither the constitutional power of the Legislature, nor of the county acting within legislative authority to fix this compensation from time to time, has been questioned. It is founded in the very nature of the thing itself.

While the statute making it the duty of the county court to fix the daily allowance for the feeding of prisoners terms it a "fee" (Sec. 11003, R. S. 1919) the section creating that allowance (Sec. 11002, R. S. 1919) seems carefully to avoid any such designation. This case turns upon the question whether or not this allowance is included in the word "fees" as it is used in Section 11036, Revised Statutes 1919.

III. The appellant's counsel in their very elaborate argument devote no time to the contention that, during the four years of the incumbency of the sheriff's office by the defendant Price, the feeding of prisoners was a perquisite of any value whatever to the sheriff, nor do they even suggest that the service was not rendered at an actual loss, although at times it exceeds in amount the entire net earnings of the office retained by him. They plant their argument upon the theory that having accepted the office of sheriff and held it during the term, he must abide by that action and be

Fees.

satisfied with the compensation, if any, to which the law entitled him, and that if, under the law, it had become necessary for him, in the performance of his duty to expend, in the board of prisoners, the entire revenue of the office, he ought not to be heard to complain in the courts which must consider the law as it is written. The question is whether, under the circumstances before us, the receipts of the sheriff or county for the boarding of prisoners must be accounted for by him as a part of the compensation which the law authorizes him to retain out of his office. The word "fee," *as used in this connection,* is the primary subject of the inquiry. It is a many-sided word used to designate many things from an estate of inheritance in land to the charge of a physician for his call upon a patient, or, as applicable to this case, the charge fixed by law for the performance of an official duty. The clear distinction between fees and costs is expressed by Bouvier as follows: "Fees differ from costs in this, that the former are, as above mentioned, a recompense to the officer for his services; and the latter, an indemnification to the party for money laid out and expended in his suit." Webster expresses the same thing as follows: "A charge fixed by law for the services of a public officer or for the use of a privilege under the control of the government; as sheriff's fees; customhouse fees; license fees." In no case except by a distortion of terms can the word be applied to the discharge of a pecuniary liability or the purchase price of goods or even to a board bill. Webster defines the word "service" as used in this connection as follows: "Act of serving; the occupation of a servant; the performance of labor for the benefit of another, or at another's command." This court in Callaway County v. Henderson, 119 Mo. 32, adopted a definition of the word fees as used in a similar case to the one now before us as follows: "Fees are a reward or wages given to one as a recompense for his labor and trouble for the execution of his office or profession, as those of an at-

torney or physician.'' The case then in judgment involved the question whether the compensation allowed by law and actually received by the county clerk for the labor and services of keeping the accounts of his office with the county treasurer were such as he should account for in determining the amount which he might retain as his compensation, and this court held that it must be so accounted for, adopting the rule that it included all compensation received for work done by him and his deputies in the performance of a duty imposed by law. We have been unable to find any case in which money paid by the State or county to an officer to reimburse him for expense incurred in performing a duty imposed by law, has been called a fee. Were such a rule to be applied in this case the evidence indicates that it might be easily possible that the expense imposed by law in the boarding of prisoners might well equal or exceed the entire amount which he would be allowed to retain as his compensation.

We do not think that there is any merit in this proposition.

IV. It is admitted by this record that in numerous instances during the term of Price, he neglected to verify his quarterly statements of fees received in his official capacity by his affidavit thereto, and that in each of the years of his term sheriff's fees were collected by him which were not included in the report. Each quarterly report filed by him is, however, preserved, with an indorsement by the presiding judge of the county court that it was examined and found correct, and an order approving the same was spread upon the record. All omissions from these reports are carefully itemized and noticed in the agreed statement of facts for use as evidence where admissible. The facts were all properly before the trial court and, as we have already said, the attorneys are agreed upon the statement that if the compensation received by the defendant Price during his term of office for the board of pris-

Reports.

óners is not to be considered in determining the amount he could lawfully retain in each year as compensation or salary for that year, its judgment should be affirmed.

The judgment of the circuit court is therefore affirmed. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur.