STATE of Missouri, ex inf., John ASHCROFT, Attorney General of Missouri, Relator,

v.

Arthur A. RILEY, Sheriff of Audrain County, Respondent.

No. 61254.

Supreme Court of Missouri, En Banc.

Dec. 6, 1979.

Rehearing Denied Jan. 15, 1980.

John Ashcroft, Atty. Gen., Bruce E. Anderson, Asst. Atty. Gen., Jefferson City, for relator.

David V. Bear, Columbia, for respondent.

SEILER, Judge.

The Attorney General filed an original proceeding in quo warranto in this court, naming Arthur A. Riley, sheriff of Audrain County as respondent. The object of this proceeding is to secure a forfeiture of his office, oust him and declare the office vacant, for alleged official misconduct.

The information charges respondent with a number of violations of official duties, alleged to result in forfeiture of his office, pursuant to Section 106.220.[1] Without taking the time and space to set forth those charges and related evidence which we do not believe warrant ouster, we instead set forth the charge which we believe is decisive of the matter, paragraph 4 of the information, which alleges as follows:

"4. That by virtue of Section 221.090, RSMo (Laws 1971) respondent, as sheriff of Audrain County, Missouri, is charged with the duty of furnishing food to each prisoner confined in his jail and submitting monthly statements, supported by affidavits, of the actual cost incurred in boarding the prisoners; and that respondent has willfully and fraudulently violated this official duty in the following respects:

A. Respondent did at least from January 1977 until February 1978 submit statements to the county court indicating a cost of $200.00 per month for the services of a cook for the jail;

B. Audrain County did, during the same period of time, reimburse respondent for his claimed expenses including $200.00 per month for a cook;

C. Respondent employed one Janet Shipley as cook for the jail at a salary of $25.00 per week, thereby defrauding the county of a sum of money in excess of $1,000.00 but the exact amount being at present unknown to relator."

1. All section citations refer to Revised Statutes of Missouri 1969 unless otherwise indicated. Section 106.220 provides as follows:

"Any person elected or appointed to any county, city, town or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful or fraudulent violation or neglect of any official duty, or who shall knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, shall thereby forfeit his office, and may be removed therefrom in the manner provided in sections 106.230 to 106.-290."

Honorable Norwin D. Houser, former commissioner of this court, was appointed master to hear the evidence and report his findings and recommendations. Judge Houser heard the parties in three days of hearings, with some thirty-one witnesses, numerous exhibits and one deposition. The master found the respondent guilty of five of the six charges, including charge 4, and recommended ouster.

The facts about charge 4, involving the handling of money allowed for employment of a cook are as follows: Under the law, Section 221.020, it is the duty of the sheriff to see that the prisoners confined in the jail are provided with food. *State ex rel. Saline County v. Price*, 296 Mo. 121, 246 S.W. 572, 574 (1922). Under Section 221.105, it is the duty of the county court to fix the amount to be expended for the cost of incarceration of prisoners confined in jails. The sheriff at the beginning of the year would work out his budget with the county court. Included in the budget was an amount for the feeding of prisoners. In the past the county court had allowed $100.00 per month for a cook. The sheriff estimated it cost him about $125.00 a month out of pocket to hire a cook. About this time the cook married and departed. The sheriff, being unable to find another cook, employed his radio dispatcher, a Mrs. Shipley, to be a part-time cook, which involved overseeing the trusties, preparing the meals, setting up the menus and ordering the food. She agreed to help out with the cooking for $25.00 a week. Then at the beginning of the sheriff's second term in 1976, the county court raised the allowance from $100.00 to $200.00. The sheriff, however, continued to pay Mrs. Shipley $25.00 per week. He also paid her social security, which he estimated amounted to about $40.00 every three months. Each month a form would be prepared by the man who did the sheriff's bookkeeping (the same man who had done the bookkeeping for respondent's predecessor) for submission to the county court of the actual cost of feeding persons lodged in the county jail. This form would list the prisoners, the nature of the charge against them, the date committed, date discharged and the number of days they were in jail during the month. It also included a dollar amount for the supplies on hand at the beginning of the month, a dollar amount for supplies purchased during the month and a deduction for the amount of supplies on hand at the end of the month, leaving a figure for the net cost of supplies for the month in question. In addition, under the item "labor paid by county for [month in question]" the figure $200.00 would appear and was included in the total cost for the month. On this basis the sheriff would submit his affidavit to the effect that the aforegoing account "is a full, true and correct statement of the actual cost incurred by him in the feeding of prisoners under his custody, during the month in question and that the amount shown due the sheriff is properly chargeable to the county or to the state under the law." The county court would approve payment accordingly.

This went on for thirteen months, when the county court itself took over the hiring of a full-time cook. This brought Mrs. Shipley's employment as cook to an end and when she remarked or complained to the sheriff about her resulting loss of income, she testified: "He did state he would be losing some, too."

All three of the county court judges were called as witnesses. One, the presiding judge, was asked about their knowledge of these facts and their understanding of the arrangements with the sheriff. The presiding judge said that the county court had never asked for or expected an accounting from the sheriff; that they did not know he was not spending the entire $200.00 for a cook; that is what they assumed it was going for; that they were not authorizing the sheriff to spend what he chose of the $200.00 and keep the rest and that they had just assumed he would spend that for a hired cook or for preparation of food. One of the associate county judges who testified was asked no questions on this subject but

expressed the opinion that Sheriff Riley's reputation is good. The other associate judge testified that January is the budget month and the practice is to take the previous year's food cost and estimate a probable increase of 10%. The $200.00 per month appears in the budget as food preparation allowance; that the court has no way of knowing whether he spends it, but takes the sheriff's word for it, relying on the figures on the sheet. It was considered as a flat allowance for food preparation. He, too, testified that respondent's reputation is good. The county clerk testified that the county court now pays the cook $6,032.00 per year and itself withholds taxes and social security; that the $200.00 per month item was a budgeted item with the board of the prisoners; that he knows of no instance when the court had asked the sheriff for an accounting and he considers the $200.00 to be an allowance as compared to something that an accounting would have to be given for. The man who kept the books for the sheriff and prepared the monthly reports said it had always been his understanding that the $200.00 was an allowance. He could tell from the quarterly returns on Mrs. Shipley and the withholding that she was not getting $200.00 a month in salary, but the sheriff told him the county court had raised the allowance to $200.00 and since he (the accountant) assumed it was an allowance, that is what he put it down for in the monthly report. He said this was "strictly an assumption" on his part.

No matter how it is viewed, however, the fact is that the sheriff month after month submitted a statement of cost of feeding the prisoners to the county court for purposes of reimbursement on which he included a $200.00 item for labor when in fact he was not paying that amount. He was only paying $25.00 a week and the social security tax, which he estimated ran around $40.00 per quarter. According to the copy of Mrs. Shipley's wage and tax statement for 1977 (Form W–2) in evidence, there was no state or federal income tax withheld on her salary. The sheriff denied that any of the $200.00 went in his pocket, but that is not credible under the facts before us. There is no place else it could have gone.

The sheriff did say that his personal automobile was used to pick up groceries and other items needed in the kitchen, which would to that extent be an added out of pocket expense for the sheriff in providing food for the prisoners. The sheriff placed no figure on what this amounted to, but no claim is made that it would amount to the difference between what the sheriff received for food preparation and what he paid the part-time cook.

As said earlier, under § 221.105, the county court fixes the amount to be spent on the prisoners for food. That section contemplates the charging of actual costs for the food and its preparation. On this point the master reported to us as follows and we agree:

██ "A sheriff is entitled to reim- bursement of the actual cost incurred by him in food preparation for prisoners, within the amount fixed by the county court. He is not entitled to make a profit on this item of cost. A sheriff who knowingly charges and collects from the county court for such food preparation more than actual cost perpetrates a fraud on the county and is guilty of misconduct in office. By representing to the county court that the actual cost of food preparation was $200.00 per month, when in truth and fact the actual cost was $25.00 per week plus social security payments, and pocketing the difference, respondent is guilty of willful and fraudulent violation of official duty under Section 106.-220. These violations occurred while Section 558.120 was in full force and effect, providing that any officer of any county who shall commit any fraud in his official capacity or under color of his office shall be adjudged guilty of a misdemeanor, and while Section 558.130 was effective, providing that every person who shall be convicted of any official misdemeanor or misconduct in office 'shall, in addition to other

punishment prescribed for such offense, forfeit his office.' Actual conviction of crime is not a necessary prerequisite to forfeiture of office and ouster in a quo warranto proceeding. *State ex inf. McKittrick v. Wymore*, 343 Mo. 98, 119 S.W.2d 941, 948 (banc 1938).

"Respondent's defense is that the practice had existed before he assumed office and he had 'gone along with it'; that he considered the $200.00 to be an allowance, for which he was not asked to account; that he did not realize he 'had to be precise and turn in the exact amount paid the cook as cost of food preparation', and that Section 221.090, requiring respondent to submit monthly statements of 'actual cost incurred by him in the boarding of prisoners', was repealed (effective August 13, 1976), before respondent's second term of office began.

 "The fact that there was a long-standing custom or practice in Audrain County not to ask the sheriff for an accounting of the money he spent for food preparation does not excuse his violation of the statute. 'Where established customs and practices are challenged and found to run counter to plain and unambiguous language of controlling regulatory statutes such customs and practices must give way to the law, which this Court must declare as it is and not as some would prefer that it had been written.' *State ex inf. Danforth v. Dale Curteman, Inc.*, 480 S.W.2d 848, 858 (Mo.1972). 'It is self-evident that a custom or usage repugnant to the express provision of a statute is void.' *State ex inf. McKittrick v. Williams*, 346 Mo. 1003, 144 S.W.2d 98, 104 (banc 1940). That respondent was not asked to account, or failed to appreciate the extent of his obligation, or that Section 221.090 was repealed in 1976, does not excuse respondent. The fact remains that respondent by false [representations] fraudulently obtained from the county, and retained for his own personal use and benefit, money to which he was not entitled."

 Under the long-established law of this state, as announced in *State ex inf.*

*McKittrick v. Murphy*, 347 Mo. 484, 148 S.W.2d 527 (banc 1941); *State ex inf. Dalton v. Mosley*, 365 Mo. 711, 286 S.W.2d 721 (banc 1956) and *State ex inf. Danforth v. Orton*, 465 S.W.2d 618 (Mo. banc), *cert. denied*, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 92 (1971), respondent's commission of the acts of official misconduct here reviewed resulted in the automatic forfeiture of his office, leaving nothing remaining to make it official except the establishment of the facts in a proper proceeding and a judicial declaration of forfeiture. " * * * [A] provision that an officer who is guilty of specified conduct 'shall thereby forfeit his * * * office' [which is the language of Section 106.220] is self-executing * * *." (our brackets) 63 Am.Jur.2d *Public Officers and Employees* § 188, p. 742; *State ex inf. McKittrick v. Whittle*, 333 Mo. 705, 63 S.W.2d 100 (banc 1933). The official misconduct involved in this case requires that in the public interest respondent be removed from the office of sheriff of Audrain County.

Accordingly, we declare that respondent Arthur A. Riley has forfeited and now usurps the office of sheriff of Audrain County. We order him ousted from office, and declare the office vacant.

Even though relator did not succeed in maintaining all of his charges against respondent, which might call for a division of costs between the parties, no division is permissible here since there is no statutory authority for assessment of costs against the state or the attorney general. *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 371 (Mo.App.1973). Accordingly, the costs, which include officers' fees for serving subpoenas, witness fees for attendance, mileage incurred by officers and witnesses, and the cost of preparing the transcript, will be assessed against respondent.

DONNELLY, RENDLEN and MORGAN, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

BARDGETT, C. J., and HIGGINS, J., dissent and concur in separate dissenting opinion of WELLIVER, J.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The principal opinion would remove Sheriff Arthur (Bud) Riley from office and prevent him from serving out his second elective term as sheriff of Audrain County, upon a finding that he "willfully and fraudulently" overreported the expenses incurred in the preparation of food for prisoners in the Audrain County Jail between January 1977 and February 1978. Sheriff Riley reported a fixed amount of $200 per month for food preparation, while expending only $25 per week for the salary of a part-time cook in the jail. The finding of the principal opinion rests on the rejection of Sheriff Riley's denial that any of the $200 went into his pocket. It rests on the inference that "There is no place else it could have gone." Sheriff Riley testified that the money all went to defray "actual food costs."

The relator must bear the burden of proof in this case. *State on inf. Stephens v. Fletchall*, 412 S.W.2d 423, 428 (Mo. banc 1967); *State on inf. Cornett v. Madget*, 297 S.W.2d 416, 427 (Mo. banc 1956). In *Madget*, this Court pointed out that while the relator in a quo warranto proceeding does not have the burden of proving guilt beyond a reasonable doubt as does the state in a criminal case,

> forfeitures are not favored and the foregoing legal principles are tempered by the rule stated in 43 Am.Jur. Public Officers, § 34, p. 39: "The remedy by the removal of a public officer has been said to be a drastic one, and the statutory provision defining the grounds for removal is given a strict construction."

297 S.W.2d at 428. A strict construction of the phrase "willful or fraudulent violation or neglect of any official duty," § 106.220, RSMo 1969 must be applied in this case.

The bookkeeper for the Sheriff's office, the county clerk, and the presiding judge and the associate judge of the county court, all testified that it was the accounting practice in Audrain County to list the food preparation allowance as a fixed sum. The fact that Sheriff Riley went along with an arguably inaccurate accounting practice that had existed before he assumed office does not establish that Sheriff Riley kept money to which he was not entitled, or that he knew that what his bookkeeper placed on the monthly statements misrepresented actual costs. The judges of the Audrain County Court knew that the $200 fixed figure was more than enough to pay the salary of the part-time cook. Relator has not proven that Sheriff Riley willfully sought to deceive the county court or to defraud the taxpayers. Relator has failed to prove that Sheriff Riley kept any of the food preparation allowance for himself. On this record, there is insufficient evidence to warrant Sheriff Riley's ouster for willfully and fraudulently violating his official duty.