William GRACE, Appellant,

v.

**MISSOURI GAMING COMMISSION, Respondent.**

**No. WD 58757.**

Missouri Court of Appeals, Western District.

Aug. 7, 2001.

---

11. § 577.020.5 (emphasis added).

James B. Deutsch, Jefferson City, Missouri, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael W. Bradley, Asst. Atty. Gen., Jefferson City, Missouri, for respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

William Grace appeals the decision of the Missouri Gaming Commission in which the Commission imposed a fine of $10,000 for two violations of § 313.812.14, RSMo 1994.[1] Specifically, the Commission found, after a hearing, that Mr. Grace had committed "misconduct" under § 313.812.14(9), when he used profanity when speaking about the rules and regulations of the Commission. The Commission also found

1. All statutory references are to the Revised Statutes of Missouri 1994.

that Mr. Grace had violated § 313.812.14 and 11 CSR 45–12.090(5)(B) for failing to seek permission from the Executive Director of the Gaming Commission to allow him, as a Level I licensee, to consume alcoholic beverages in a non-gaming area of the casino.

On appeal, Mr. Grace raises four points of error with respect to the Commission's decision in this case. The first two concern the assessment of penalties and fines for misconduct in violation of § 313.812.14(9) concerning statements made by him in which he used profanity. First, he claims that the Commission misapplied the legal standard of misconduct when the Commission imposed disciplinary penalties and fines related to his use of profanity. In this point, Mr. Grace also argues that the Commission's finding that he used profanity is unsupported by competent and substantial evidence on the record as a whole. Second, Mr. Grace asserts that the imposition of disciplinary penalties and fines for his speech and expression violated his First Amendment rights. He also argues that the Commission's application of the standard of misconduct in this case renders the statute unconstitutionally vague in violation of the due process clause.

Mr. Grace's last two points concern the penalties and fines assessed against him relating to his consumption of alcoholic beverages in a non-gaming area of the casino in violation of 11 CSR 45–12.090(5)(B). In his third point, Mr. Grace argues that the Commission erred in imposing disciplinary penalties and fines because the regulation he is alleged to have violated does not apply to him as a licensee by its terms, cannot be reasonably interpreted to apply to him as a licensee, and could not, under the circumstances, have been known by him to apply to him as a licensee. Thus, he claims, that discipline

for violation of 11 CSR 45–12.090(5)(B) was unauthorized by law, unsupported by competent and substantial evidence on the record as a whole, and arbitrary, capricious and unreasonable. In his final point, Mr. Grace claims that imposing disciplinary penalties and fines under this regulation would violate his due process rights because application of this regulation to him under the circumstances would render the regulation vague, ambiguous and uncertain.

This court finds that Mr. Grace did not commit misconduct by using profanity in referring to the Commission, because he did not intend to discredit the Commission or its rules. With respect to the Commission's second finding, however, this court finds that Mr. Grace violated § 313.812.14(1) for failing to make provisions for requesting authorization prior to consuming alcohol in the non-gaming areas of the casino. Thus, the decision of the Gaming Commission is reversed with respect to its finding of misconduct and affirmed with respect to Mr. Grace's unauthorized consumption of alcohol in a non-gaming area. This court also reverses the $10,000 fine and remands the case to the Commission for determination of an appropriate penalty for one violation.

## Factual and Procedural Background

Mr. Grace is the president and sole shareholder of Continental Gaming Company. Continental Gaming Company is a general partner in the St. Joseph Riverboat Partners, a Class A owner/operator licensee of the Missouri Gaming Commission which is licensed to conduct riverboat gaming operations at the St. Jo Frontier Casino II. Mr. Grace is the Managing Partner of the licensee partnership and, also, a Level I occupational licensee/key person.

On the evening of May 29, 1999, Mr. Grace was attending social and business functions at the casino facility. During dinner at a restaurant at the facility, Mr. Grace had a glass of wine. Around midnight, Mr. Grace decided to leave the facility by way of the casino. As Mr. Grace approached the casino's boarding area, he observed numerous patrons waiting to board at a time which was past what he believed to be the midnight boarding time. At this time, gaming businesses in Missouri were required to follow a system of boarding times, whereby patrons were allowed to board only at designated times. Unbeknownst to the security personnel or Mr. Grace, the "official clock" of the casino was approximately 5 minutes late, causing the delay in boarding.

When Mr. Grace approached the boarding area, Shawn Griffin, the turnstile security officer, was taking the readings from the exit turnstiles. At the same time, Theora Davis, another security officer, was releasing the barrier to allow casino patrons into the turnstiles. As casino patrons began to enter the turnstile area, Dan Miller, another security officer, was aware that the approval for boarding had not been received from dispatch. He approached the patrons and stopped them from boarding.

Mr. Grace was not pleased with the way Mr. Miller treated the patrons and approached him after boarding was completed. Mr. Grace asked Mr. Miller what was happening, to which Mr. Miller responded that they had not received word from dispatch to open the turnstiles. The exchange between Mr. Grace and Mr. Miller then became heated. During their conversation, Mr. Griffin interjected that they were attempting to follow the rules to avoid a fine. Mr. Grace responded that the issue was not about following rules, but the treatment of customers. Specifically, Mr.

Grace told Mr. Miller and Mr. Griffin "don't worry about the f—ing fines, worry about getting customers on board" and "f—the rules." The tone of the conversation continued to escalate whereupon Ms. Davis called to request that Chief of Security Ron Ellis come to the entrance. Mr. Ellis arrived and after discussions with Mr. Ellis, Mr. Grace left. Mr. Miller and Mr. Griffin filed incident reports later that evening.

As a result of the incident, the Gaming Commission proposed disciplinary action against Mr. Grace for misconduct regarding his confrontation of the security guards in violation of § 313.812.14(9), and for consuming alcoholic beverages in a non-gaming portion of the casino in violation of 313.812.14(1). A hearing before a Gaming Commission hearing officer was held on April 14, 2000. The hearing officer found that under § 313.812.14(9), Mr. Grace's conduct of confronting officers in a public area did not constitute misconduct. Further, the hearing officer found that the evidence did not support that Mr. Grace was indicating to security officers that they were to follow his orders rather than Commission rules. The hearing officer did, however, find misconduct in Mr. Grace's statements which used profanity. Although recognizing that Mr. Grace had denied making the statements, the hearing officer found that Mr. Grace's statements, "don't worry about the f—ing fines, worry about getting customers on board" and "f—the rules," "could have been taken out of context and reasonably be inferred by employees and customers that the Commission's rules [were] not important." The hearing officer also found that Mr. Grace violated § 313.812.14(1) and 11 CSR 45–12.090(5)(B) for not submitting a request for authorization to consume alcoholic beverages in the non-gaming areas of the premises. The hearing officer's findings of facts and conclusions of law were

subsequently adopted by the Missouri Gaming Commission. Mr. Grace filed this appeal.

## Standard of Review

 Under § 313.840.2, review of all decisions of the Missouri Gaming Commission "relating to excursion gambling boat operations shall be directly to" this court. Chapter 313, however, provides no further comment on judicial review of decisions of the Gaming Commission. *Cf.* Section 287.495 (providing specific grounds to "modify, reverse, remand for rehearing, or set aside the award" of the Labor and Industrial Relations Commission). Where there is no specific statute concerning an aspect of judicial review of administrative agency decisions, for example, the scope of review in this case, Chapter 536 operates "to fill in gaps in administrative procedures." *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n,* 24 S.W.3d 243, 245 (Mo.App.2000). Thus, this court's review of the decision of the Missouri Gaming Commission is governed by Chapter 536. *See State ex rel. Riverside Joint Venture v. Mo. Gaming Comm'n,* 969 S.W.2d 218, 221 (Mo. banc 1998).

 Judicial review under § 536.100 to § 536.140 applies to contested cases, like this one, and the procedures found therein "were constituted to implement the mandate of our organic law that '[a]ll final decisions ... of any administrative ...

body ... which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law ...' " and found in article 5, § 18 of the Missouri Constitution.[2] *Deffenbaugh Indus., Inc. v. Potts,* 802 S.W.2d 520, 522, 523 (Mo.App.1990) (quoting *Farmer's Bank v. Kostman,* 577 S.W.2d 915, 921 (Mo.App.1979)). Specifically, § 536.140.2 outlines the scope of judicial review:

The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

The scope of judicial review in all contested cases, whether or not subject to judicial review pursuant to sections 536.100 to 536.140, and in all cases in which judicial review of decisions of administrative officers or bodies, whether state or local, is now or may hereafter be provided by law, shall in all cases be

---

**2.** Article 5, § 18 of the Missouri Constitution reads:

All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are

supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

at least as broad as the scope of judicial review provided for in this subsection[.]
...

It is well established that review of agency decisions of questions of law is de novo. *See Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 560 (Mo.App.1995). Section 536.140.3 provides that a reviewing court may weigh the evidence and determine facts, but only where the agency's action "being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts[.]" A reviewing court "gives due weight ... to the agency's opportunity to observe the witnesses." *Hornsby v. Dir. of Revenue*, 865 S.W.2d 662, 663 (Mo. banc 1993); Section 536.140.3.

## Commission Erred in Finding Use of Profanity Constituted Misconduct

In his first two points, Mr. Grace challenges the Commission's finding of misconduct for the use of profanity. These points assert four grounds for error. First, Mr. Grace argues that the Commission incorrectly applied the legal requirements for "misconduct" under § 313.812.14(9). He claims that there is no support for the legal conclusion that the use of profanity alone constitutes misconduct under this section. Second, Mr. Grace argues that the Commission's finding that he actually made the statements using profanity was not supported by competent and substantial evidence. Third, Mr. Grace claims that the Commission's finding that the mere use of profanity would have "disrespected" the Commission and its rules violated his right to free speech. Finally, he

claims that the Commission's decision violates due process "because 'misconduct,' as construed by the Commission ... is unconstitutionally vague."

■ As a preliminary matter, this court must address Mr. Grace's contention that the Commission's finding that Mr. Grace used profanity is not supported by the evidence. Mr. Grace contends that Mr. Miller did not recall that Mr. Grace made any comments about the Commission or its rules. Another employee present, he argues, also testified that Mr. Grace did not make the statements.[3] The only contrary evidence, he argues, is from Mr. Griffin, whom Mr. Grace claims is a disgruntled employee.

■ While noting that Mr. Grace denied making the statements, the Commission, nonetheless, determined that "[c]redible evidence supports a finding otherwise." In general, it is not the role of this court to substitute its opinion for that of the administrative agency whose decision this court reviews. *Perry v. City of St. Louis Civil Serv. Comm'n*, 924 S.W.2d 861, 864 (Mo. App.1996). Specifically, this court " 'must defer to the Commission's findings of fact.' " *Id.* (quoting *Wirtz v. Civil Serv. Comm'n*, 646 S.W.2d 384, 385 (Mo.App. 1983)). In addition, "[t]he determination of the credibility of witnesses is a function of the administrative tribunal." *Clark v. Bd. of Dir. of Sch. Dist.*, 915 S.W.2d 766, 774 (Mo.App.1996). This court will defer to the Commission "on issues concerning credibility and weight to be given to conflicting evidence and testimony." *Maxon v. Leggett & Platt*, 9 S.W.3d 725, 729 (Mo. App.2000).

■ Although Mr. Grace argues that the Commission's finding that he used pro-

---

**3.** Ms. Davis actually testified that she did not hear Mr. Grace curse the Commission or the rules.

fanity is unsupported by competent and substantial evidence, there was testimony by Mr. Griffin at the hearing that profanity was used. Mr. Grace asserts that this testimony was from a disgruntled employee and, thus, so incredible that it could not be competent and substantial evidence. The Commission found otherwise. "The [Commission] is entitled to weigh the credibility of testimony received and believe or disbelieve all or part of any witnesses' testimony." *Kendrick v. Bd. of Police Comm'rs*, 945 S.W.2d 649, 653 (Mo.App. 1997). Obviously, the Commission believed Mr. Griffin and not Mr. Grace or Mr. Miller. The Commission's finding that Mr. Grace made these statements is supported by competent and substantial evidence.

Turning to the Commission's finding of misconduct under § 313.812.14(9), Mr. Grace's claim of error does not specifically challenge the definition of "misconduct" assigned by the Commission. Instead, he argues that the Commission misapplied the legal standard of "misconduct" as it relates to his use of profanity.

Section 313.812.14(9) states the following:

14. A holder of any license shall be subject to imposition of penalties, suspension or revocation of such license, or other action for any act or failure to act by himself or his agents or employees, that is injurious to the public health, safety, morals, good order and general welfare of the people of the state of Missouri, or that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri unless the licensee proves by clear and convincing evidence that it is not guilty of such action. The commission shall take appropriate action against any licensee who violates the law or the rules and regulations of the commission. Without limiting other provisions of this subsection, the following acts or omissions may be grounds for such discipline:

* * *

(9) Incompetence, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties regulated by sections 313.800 to 313.850.

In addressing the Commission's finding of misconduct with respect to the use of profanity, this court must briefly address the Commission's findings and conclusions concerning each of the other bases for disciplinary action resulting from the incident with Mr. Miller. As a result of this incident, the Gaming Commission proposed discipline on three grounds under § 313.812.14(9). The Gaming Commission specifically alleged that Mr. Grace had committed "misconduct" by (1) confronting security officers in a public area, (2) indicating that the officers should follow his orders instead of Missouri Gaming Commission regulations, and (3) using profanity. While acknowledging that the term "misconduct" was not defined under § 313.812.14, the Commission noted that the term had been defined by Missouri courts with respect to other statutes and regulations. Based upon these definitions and dictionary definitions of misconduct, the Commission concluded that "the legal and practical definitions of 'misconduct' confirm that the wrongdoing in question must be an intentional, willful act, and must rise above reckless, negligent actions."

In applying this definition to the facts of this case, the Commission determined that Mr. Grace's "decision to discuss this matter in a public area of the Casino was an intentional act, but it fails to rise to the level of 'wrongdoing' that would require

discipline." The Commission categorized this behavior as "'poor judgment' that does not rise to the definition of 'misconduct[.]'" In addition, with regard to the second charge, the Commission found that "[n]o evidence was adduced at [Mr. Grace's] hearing that would show that [he], through his statements 'don't worry about the f—ing fines, worry about getting customers on board' and 'f—the rules,' intended to indicate to his security officers that they should ignore Commission rules and follow his orders instead." The Commission stated:

> [Mr. Grace's] choice of words was poor ... and it is certainly understandable that these statements, if taken in the wrong context, could lead to the conclusion that he was trying to minimize the importance of Commission rules. But in order to be found as "misconduct," evidence must exist that it was [Mr. Grace's] intent, and not a[sic] merely a reasonable, but incorrect, interpretation of his comments resulting from a poor choice of words.

After finding that Mr. Grace's public confrontation of the officer did not constitute misconduct and his statements were not intended to indicate to security officers that they should ignore the Gaming Commission's rules, the Commission nonetheless determined that "his actions in this circumstance and his choice of words" ("don't worry about the f—ing fines, worry about getting customers on board" and "f—the rules") constituted misconduct. The Commission determined that although Mr. Grace's actions and choice of words were acts of poor judgment and were not intended to disparage the Commission's rules, his use of profanity was clearly intentional and the statement could be taken out of context and be perceived as disparaging the Commission's rules. Specifically, the Commission stated:

This is not a holding that a licensee should be subject to discipline each time he or she utters a profane word while on gaming facilities. The specific words used in this situation are unusual in their circumstances, and require an unusual conclusion. [Mr. Grace's] statements, specifically "don't worry about the f—ing fines, worry about getting customers on board" and "f—the rules," are particularly disturbing because of the fact that they could be taken out of context and reasonably be inferred by employees and customers that the Commission's rules are not important. This may not have been the intent, but, as stated earlier, is a natural conclusion. He did not intend this conclusion to be made, and has been found above not to be in violation for doing so, but there must be consequences for [Mr. Grace's] statements and the specific use of profanity in this case when discussing the Commission. . . . [Mr. Grace] must realize, however, that there are boundaries that even he may not cross in an attempt to lecture an employee. To tell an employee, under any circumstances, to "f—the rules" and to not worry about fines is bound to set a negative impression of the importance of Commission rules in the mind of that employee, whether that was [his] intent or not. . . . Simply put, due to the risk of disrespecting the Commission regulations, whether intentional or not, the Commission cannot stand for the intentional use of profanity when speaking about its rules and regulations.

Thus, the decision of the Commission was, in essence, that Mr. Grace's use of profanity in discussing the rules of the Gaming Commission constituted "misconduct" under § 313.812.14(9).

██ It is immediately evident that the Commission was inconsistent in its applica-

tion of the legal concept of "misconduct." The legal definition of "misconduct," because it is an interpretation of the language of a statute, is a question of law. *See Petet v. State, Dep't of Soc. Servs., Div. of Family Servs.,* 32 S.W.3d 818, 822 (Mo. App.2000). While no court has interpreted "misconduct" as used in § 313.812.14(9), the Missouri Supreme Court has defined the term in another context by utilizing the dictionary definition found in Black's Law Dictionary. *See In re Baber,* 847 S.W.2d 800, 806 (Mo. banc 1993) (defining misconduct in the context of judicial discipline proceedings by reference to Black's Law Dictionary); *See also In re Conard,* 944 S.W.2d 191, 201 (Mo. banc 1997) (applying the dictionary definition as set forth in *Baber,* 847 S.W.2d at 806). The Supreme Court found that "[m]isconduct means transgression, dereliction, unlawful, or wrongful behavior, or impropriety that is willful in nature." *Conard,* 944 S.W.2d at 201. Since the Supreme Court did not define "willful" in *Baber* or *Conard,* this court utilizes the dictionary definition of "willful." "Willful" is defined as "proceeding from a conscious motion of the will; ... deliberate. Intending the result which actually comes to pass; ... intentional, purposeful; ... done with evil intent, or with bad motive or purpose, or with indifference to the natural consequences, unlawful...." BLACK'S LAW DICTIONARY 1599 (7th ed.1999).

▮ The Commission found that Mr. Grace had committed "misconduct" for the use of profanity because the statements "could be taken out of context and reasonably be inferred by employees and customers that the Commission's rules are not important." It is true that a license holder can be subject to discipline for misconduct under § 313.812.14 in discrediting the Commission or its rules. Thus, discrediting the Commission is a wrongful act. Yet

misconduct requires not only the doing of a wrongful act, but that the wrongful act be done willfully. The Commission had *already* determined that it was not Mr. Grace's intention to discredit the rules. In considering the allegation of misconduct for indicating to security officers that they should follow his orders instead of Commission regulations, the Commission identified the wrongful act as Mr. Grace's indicating to security officers that they should disregard the Commission's rules. The Commission determined that this was not his intent, and thus, he had not committed misconduct. It, instead, determined that his statements constituted " 'poor judgment' that does not rise to the definition of 'misconduct[.]' "

Having found that his choice of words, which included the profanity, was poor judgment and not misconduct, it is inherently inconsistent for the Commission to then find that the same statement constituted misconduct merely because it contained profanity and could be taken out of context to mean something different. The latter conclusion is contrary to the definition of misconduct, since the Commission found that no willful act was committed. The conclusion of the Commission that Mr. Grace's use of profanity constituted misconduct is in conflict with its other findings and is contrary to the law and, thus, is unauthorized by law.

The Commission cites *Pen–Yan Inv., Inc. v. Boyd Kansas City, Inc.,* 952 S.W.2d 299, 303 (Mo.App.1997), where this court recognized that the licensing provisions of Chapter 313 render lawful what would otherwise be criminal activity and that gaming operations should be "strictly monitored and regulated." As such, the Commission argues that because of the nature of gambling, strict compliance with the rules and regulations is required. It is not necessary, however, for this court to

determine whether strict compliance is required, in general. Here, the Commission proposed disciplinary action against Mr. Grace specifically for misconduct under § 313.812.14(9). A finding of misconduct requires a willful act. Having charged Mr. Grace with *misconduct* under § 313.812.14(9), the Commission is compelled to establish that a willful act occurred. This court does not condone the use of profanity when discussing the Commission or its rules. In fact, had Mr. Grace been charged with merely discrediting the Commission under § 313.812.14 and not with misconduct, this court's decision may have been different. That question is not before this court and is left for another day. This court is presented only with the question of whether the Commission correctly applied the law when it determined that Mr. Grace committed misconduct, and we find that it did not do so.

This court finds that because the Commission found that Mr. Grace did not intend to discredit the Commission, his statements were not willful and do not meet the definition of misconduct. Thus, the decision of the Gaming Commission is unauthorized by law and is reversed with respect to its finding that Mr. Grace committed misconduct by using profanity in referring to the Commission.

Having determined that the finding of misconduct was improper, this court need not address Mr. Grace's challenge to the decision concerning free speech or vagueness. *See State ex rel. Mo. Cable Telecomm. Ass'n v. Mo. Pub. Serv. Comm'n,* 929 S.W.2d 768, 771 (Mo.App.1996) (noting that courts are "constrained by the rule that courts will avoid deciding constitutional questions if the case can be fully determined without reaching constitutional issues").

### Finding of Violation of § 313.812.14(1) was Proper

Mr. Grace's final two points concern the Commission's finding that he violated § 313.812.14 and 11 CSR 45–12.090(5)(B) by having consumed alcoholic beverages in a non-gaming area. Mr. Grace first argues that the regulation does not apply to him as a licensee. He claims that the Commission's discipline of him was "unauthorized by law, unsupported by competent and substantial evidence on the record as a whole, arbitrary, capricious and unreasonable." He claims that 11 CSR 45–12.090(5)(B) creates no obligation on him, but only on the "excursion liquor licensee." Next, he claims that the Commission's application of this regulation is "unclear, ambiguous and vague to the point that [his] constitutional right to due process would be violated by such statute's enforcement."

The Commission found that Mr. Grace violated 11 CSR 45–12.090(5)(B) and § 313.812.14 in failing to obtain written approval from the director to consume alcohol in a non-gaming area of the casino. The regulation, 11 CSR 45–12.090(5)(B), reads:

> An excursion liquor licensee may submit to the director a written request for authorization for level I licensees or applicants or other corporate officers to consume alcoholic beverages in nongaming areas of the premises for business purposes. The director's authorization or denial shall be in writing.

Section 313.812.14 states:

> A holder of any license shall be subject to imposition of penalties, suspension or revocation of such license, or if the person is an applicant for licensure, the denial of the application, for any act or failure to act by himself or his agents or employees, that is injurious to the public health, safety, morals, good order and general welfare of the people of the

State of Missouri, or that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri unless the licensee proves by clear and convincing evidence that it is not guilty of such action. The commission shall take appropriate action against any licensee who violates the law or the rules and regulations of the commission.

\* \* \*

While the Commission agreed that 11 CSR 45–12.090(5)(B) read by itself did not apply to Mr. Grace, since he was not an excursion liquor licensee, it nonetheless imposed the penalty on him personally under § 313.812.14. The Commission stated "that § 313.812.14 place[d] an obligation on licensees. Licensees regulated by the Missouri Gaming Commission shall be subject to imposition of penalties, suspension or revocation of such license, or other action for *any act or failure to act* by himself or his agents or employees...." Further, the Commission found that § 313.812.14(1) allows that "[a] licensee may be disciplined for failing to comply with or make provisions for compliance with the rules and regulations of the commission."

■ Here, Mr. Grace holds an occupational license under § 313.807.2, and is designated as a "key person" as required by 11 CSR 45–4.030(2)(A). A "key person" is defined as, *inter alia*, "[a]n officer, director, trustee, proprietor, managing agent, or general manager of an applicant or licensee or of a business entity key person of an applicant or licensee[.]" 11 CSR 45–1.090(11)(B)(1). Mr. Grace is the sole shareholder of Continental Gaming Company, which is the general partner in the St. Joseph Riverboat Partners partnership, and he is the managing general partner of the partnership. St. Joseph Riverboat Partners holds a Class A license to own and operate an excursion gambling boat. Thus, St. Joseph Riverboat Part-

ners is the excursion liquor licensee. See 11 CSR 45–12.020. Under 11 CSR 45–12.090(5)(B), the entity responsible for submitting a request for authorization to allow Mr. Grace to consume alcoholic beverages in non-gaming areas was St. Joseph Riverboat Partners. While the regulation may not impose a duty on Mr. Grace to personally submit a request to the director for authorization to consume alcohol in the non-gaming areas, § 313.812.14(1) does, however, provide for the imposition of penalties against "[a] holder of any license" for "failing to ... make provision for compliance with ... the rules and regulations of the commission...." As managing partner of the entity responsible for submitting such a request, and the person who was consuming alcohol without having received the proper authorization, Mr. Grace failed to make provisions for approval of his consumption of alcohol under 11 CSR 45–12.090(5)(B). Mr. Grace did not violate 11 CSR 45–12.090(5)(B), per se, since that regulation does not impose the duty on him directly, but he did violate § 313.812(14)(1) by failing to make provisions for compliance with that regulation prior to consuming alcohol in the non-gaming area of the casino.

■ Mr. Grace also challenges the Commission's decision by claiming that the application renders 11 CSR 45–12.090(5)(B) vague, ambiguous and uncertain in that its requirements could not be reasonably understood to require that he, rather than the excursion liquor licensee, obtain permission for him to consume alcohol in the non-gaming areas of the casino. He claims that he was told by Commission agents that he would not need permission to consume alcohol, and he conducted himself consistently for almost five years without knowledge of such a requirement. Further, he alleges that he was observed by gaming agents doing so.

In addressing Mr. Grace's challenge to the vagueness of 11 CSR 45–12.090(5)(B), this court must employ a two-part analysis. *Duncan v. Mo. Bd. for Architects, Prof'l Eng's and Land Surveyors*, 744 S.W.2d 524, 531 (Mo.App.1988). First, "[t]he statute must define the proscribed conduct with sufficient definiteness that ordinary people can discern what acts are prohibited[.]" *Id.* Next, "the offensive conduct must be defined in a manner which does not encourage arbitrary and discriminatory application." *Id.* As stated above, Mr. Grace is not being penalized because he violated 11 CSR 45–12.090(5)(B). The violation concerns his failure to make provisions for compliance with that regulation in violation of § 313.812.14(1). A reading of the regulation clearly indicates that written authorization must be obtained for a level I licensee to consume alcohol in a non-gaming area. Furthermore, § 313.812.14(1) states that a license holder shall be subject to penalties for failing to make provision for compliance with regulations. Nothing about the statute or regulation is vague, nor is the Commission's application of the statute in this case. This court finds that the Commission's application of 11 CSR 45–12.090(5)(B) and § 313.812.14 does not render the regulation or statute vague.

Mr. Grace also asserts in his challenge to the statute as vague, ambiguous and uncertain that he consumed alcohol on the premises for five years without knowledge of the requirement that he must first obtain the written authorization from the director. He challenges the Commission's statement that ignorance of the law is no defense by arguing that "[i]gnorance of tortured misinterpretation of a statute and regulation is, in fact, protected by the due process clauses ... and is amply justified as a defense in this case." Having determined that the statute is not vague, nor the interpretation by the Commission tortured, this court stands by the principle that "[p]ersons are conclusively presumed to know the law ." *Mo. Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 75 (Mo. banc 1990).

Similarly, while Mr. Grace asserts that "it had long been the accepted practice that partners of the St. Joseph Riverboat Partnership did not need approval to drink alcoholic beverages at the casino," this argument is unpersuasive. The Supreme Court has stated that "[w]here established customs and practices are challenged and found to run counter to plain and unambiguous language of controlling regulatory statutes such customs and practices must give way to the law, which this Court must declare as it is and not as some would prefer that it had been written.... It is self-evident that a custom or usage repugnant to the express provision of a statute is void." *State ex inf. Ashcroft v. Riley*, 590 S.W.2d 903, 907 (Mo. banc 1979) (internal quotations and citations omitted) (involving an action seeking the ouster of a sheriff from office).

Mr. Grace's third and fourth points are denied.

This court finds that Mr. Grace did not commit misconduct by using profanity in referring to the Commission. While his statements may be interpreted to disparage or discredit the Commission and its rules, that was not Mr. Grace's intent, so the misconduct was not willful. With respect to the Commission's second finding, however, this court finds that Mr. Grace violated § 313.812 .14(1) for failing to make provisions for requesting authorization prior to consuming alcohol in the non-gaming areas of the casino. Thus, the decision of the Gaming Commission is reversed with respect to its finding of misconduct and affirmed with respect to Mr. Grace's unauthorized consumption of alco-

hol in a non-gaming area. This court also reverses the $10,000 fine and remands the case to the Commission for determination of an appropriate penalty relating only to his violation with respect to 11 CSR 45–12.090(5)(B) and § 313.812(14)(1).

All concur.