NATURAL RESOURCES, INC., d/b/a Key Outdoor d/b/a Elliott/McDonald Outdoor Advertising, Petitioner–Appellant,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent–Respondent.

No. 25084.

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 2003.

Motion for Rehearing and Transfer Denied May 22, 2003.

Application for Transfer Denied
July 1, 2003.

John E. Curran, M. Nichole George, Curran & Associates, Camdenton, for Appellant.

· Bryce D. Gamblin, Rich Tiemeyer, Missouri Highway and Transportation Commission, Chesterfield, for Respondent.

KENNETH W. SHRUM, Judge.

This is an appeal from a judgment of the circuit court of Camden County which affirmed a final decision of the Missouri Highway and Transportation Commission ("Commission"). The Commission found that the Missouri Department of Transportation ("MoDot") properly terminated a permit for outdoor advertising granted to Natural Resources, Inc. ("Appellant"). This appeal involves numerous allegations of error raised by Appellant. Having found merit in Appellant's first claim of Commission error, however, we need not look further. We reverse the final decision and order of the Commission.

### STANDARD OF REVIEW

This court will review the decision of the Commission, and not that of the

circuit court, to determine whether it was supported by competent and substantial evidence; whether it was arbitrary, capricious, or unreasonable; or whether the Commission abused its discretion. *Icehouse Cold Storage v. State Highways and Transp. Comm'n*, 23 S.W.3d 651, 653[1] (Mo.App.2000). Since MoDot's regulatory authority over outdoor advertising is derived from statutes, we must construe the relevant legislation in light of the purposes the legislature sought to accomplish and the evils it intended to cure. *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803 (Mo. banc 1975). Unambiguous provisions in statutes and regulations must be given their plain and ordinary meaning. *Long v. Interstate Ready–Mix, L.L.C.*, 83 S.W.3d 571, 576 (Mo.App.2002); *Whiteman v. Del–Jen Const., Inc.*, 37 S.W.3d 823, 829[4] (Mo.App.2001).

To determine if a statute or regulation is unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence. *Long*, 83 S.W.3d at 576[8]. The ordinary meaning of a word is usually derived from the dictionary when a word used in a statute or regulation is not defined therein. *Id.* at 576[9]; *Whiteman*, 37 S.W.3d at 829[5].

## FACTS

There are two primary questions involved in this appeal: First, what is the meaning of the term "outdoor advertising" as used in Missouri's "Billboard Law," §§ 226.500–600; and second, whether an increase in "size or area of a sign" occurs (within the meaning of 7 CSR 10–6.060(3))

when an advertising message is put on a sign.[1] These questions arise from the following undisputed facts.

Appellant applied to MoDot in January or February of 1999 for permission to "erect and/or maintain outdoor advertising." The application was for a "sign" on the north side of Highway 54 in Cole County, 1.5 miles west of the intersection of Highway 54 and Route CC. The application described the proposed sign as a "[d]ouble-decked," "V–Type," "illuminated" sign, totalling 1200 square feet (30 feet in height by 40 feet wide).

A "V-type" sign is one described in Commission's regulations as follows: "A back-to-back sign, double-faced sign or V-type sign is a sign with two (2) sides or outdoor advertising faces owned by the same sign owner which are physically contiguous, or connected by the same structure...." 7 CSR 10–6.040(4). A V-type sign is treated as one sign by statute (§ 226.540.2(b)) and regulations (7 CSR 10–6.015(1);7 CSR 10–6.040(4)) to determine if it complies with sizing, lighting, spacing, and location requirements.[2]

On March 8, 1999, MoDot granted Appellant a permit to "maintain outdoor advertising" in accordance with its application. The permit required that the "sign" be "erected" within 120 days, otherwise it was void.

Appellant then built the sign on Route 54 in Cole County at the prescribed location and in accordance with the permit's provisions. The entire billboard was built by May 15, 1999, well within the 120–day

---

1. All statutory references are to RSMo (2000), unless otherwise indicated. The abbreviation "CSR" refers to the Code of State Regulations, and all references to regulations are to those in effect in 2000, unless stated otherwise.

2. The reference to square footage in a permit refers to each side of the sign. Thus, Appellant's permit request for a V-type sign of 1,200 square feet meant that, if approved, Appellant's sign would have 2,400 square feet of advertising space, i.e., 1,200 square feet on each side of the V-type sign.

time limit specified by the permit. By that date, the west side of the structure contained an advertising message, but no advertising was in place on the east side thereof. Even so, the east side contained "stringers" which were described as the boards to which the advertising message would be affixed.

A legislative change in the Billboard Law took effect August 28, 1999. In part, this legislation reduced the maximum allowable size for outdoor advertising from 1200 square feet to 800 square feet. It also provided that if a sign existed on August 28, 1999, that complied with pre-August 28, 1999, law, such sign would be denominated as "nonconforming," but could remain (although in non-compliance with existing law). Relevant regulations then in effect established "criteria for maintenance of nonconforming signs," including a prohibition against increasing the size of such sign.[3]

The major contention in this case involves the Commission's conclusion that the sign "was increased in size" by the addition of an advertising message affixed to the east side after the new legislation became effective. MoDot's "permit specialist" testified that the only thing that changed was the added message. The permit specialist further claimed, in deposition testimony admitted at trial, that "the sign is not the structure. The sign is the message." This was the sole reason that MoDot ordered termination of the permit and removal of the sign.

The Commission upheld MoDot's actions. Appellant then sought review of the decision in the circuit court of Camden County. This appeal was lodged after the circuit judge affirmed Commission's order.

## DISCUSSION AND DECISION

Appellant's first point maintains the Commission committed reversible error when it concluded that adding a "message" to a lawful nonconforming V-type sign constituted a violation of state regulations that prohibit expansion of a nonconforming sign. The Commission responds that Appellant was required to "erect a sign structure *and place advertising on it*" within the 120–day time limit specified by the permit. (Emphasis supplied.) The Commission argues that Appellant failed to place advertising on *both* sides of the V-type sign; consequently, the east side of the sign was not considered "regulated outdoor advertising." Continuing, the Commission claims the addition of an advertising message constituted a change in size of the nonconforming sign in violation of 7 CSR 10–6.060(3)(C).[4]

To explain its position, the Commission relies heavily upon § 226.510(3). The statute defines "outdoor advertising" as follows: "[A]n outdoor sign, display, device, figure, painting, drawing, *message,* plaque, poster, *billboard,* or other thing *designed, intended,* or used *to advertise or inform* . . . ." (Emphasis supplied.) Going further, the Commission asserts:

> "[B]ased on the state statute, it is clear that 'outdoor advertising' is not the sign structure itself, but the message. Outdoor advertising does not become regulated when the hardware for the sign goes into the ground, but when the message is attached. Anyone could build a sign structure at any place along the highways without having a permit; however state regulation only attaches

---

3. Commission ruled that Appellant's sign became nonconforming once its allowable size was reduced via legislative change. Appellant does not claim that finding is erroneous.

4. In pertinent part, the regulation provides: "The size or area of a sign shall not be increased after the date the sign becomes a nonconforming sign."

whenever advertising is placed on the sign and it is at that time statutes must be complied with."

This court cannot fathom that the Commission would actually want us to accept such an argument given the purpose of the Billboard Law, its breadth as gleaned from the statutory description of "outdoor advertising," and the permit requirements for this law.

First, the Commission's argument that state regulation only attaches when advertising is put on the sign runs counter to the underlying purpose of the law. Its purpose is "to promote highway safety, to promote convenience and enjoyment of highway travel, and to preserve the natural scenic beauty of highways and adjacent areas." § 226.500. "A blank billboard is just as contrary to that purpose as is a billboard with advertising." *Outdoor Media Dimensions Inc. v. State,* 150 Or.App. 106, 945 P.2d 614, 619 n. 6 (1997).[5] Regulation of billboards is deemed necessary because the medium itself is objectionable, not because of the messages they convey. *John Donnelly & Sons v. Campbell,* 639 F.2d 6, 8 (1st Cir.1980); *Metromedia, Inc. v. City of San Diego,* 26 Cal.3d 848, 164 Cal.Rptr. 510, 610 P.2d 407, 418 (1980). To accept the Commission's argument would ignore the fact that the natural beauty of the countryside is more adverse-ly affected by the billboard structure than by the message itself.[6]

Second, the legislature sought to achieve its stated purpose by regulating all "outdoor advertising." In doing so, it broadly defined "outdoor advertising" to include, *inter alia,* "an outdoor sign ..., message ..., billboard, or other thing designed, intended, or used to advertise or inform." § 226.510.3. Thus, every regulatory power given MoDot over "outdoor advertising" includes empowerment over, among other things, the "message," or the "sign," or the "billboard," or any "other thing designed ... to advertise."[7] There is simply no authority, statutory or otherwise, that supports the Commission's argument that an "outdoor advertising" device must carry a message before it is subject to regulation.

Third, the Commission's argument wholly disregards the permit provisions of the Billboard Law and case law relevant thereto. Specifically, § 226.580 makes it unlawful for any person to erect "outdoor advertising," i.e., a billboard, within 660 feet of the right-of-way of a primary highway unless a permit is obtained. *Osage Outdoor Adver. v. Mo. Highway and Transp. Comm'n,* 677 S.W.2d 389, 390 (Mo.App. 1984). If an outdoor advertiser resorts to self-help and erects a sign without a permit, the Commission is empowered to order its removal. *Id.* The permit requirements of the Billboard Law completely

---

5. The stated purpose of Oregon's highways act was "to preserve the natural beauty and aesthetic features of [the state's] highways and adjacent areas." The case was affirmed on appeal by the Oregon Supreme Court at 331 Or. 634, 20 P.3d 180 (2001).

6. Long before the Billboard Law was enacted, the Supreme Court of Missouri described billboards as "constant menaces to the public safety and welfare of the city" and "inartistic and unsightly." *St. Louis Gunning Advertisement Co. v. City of St. Louis,* 235 Mo. 99, 137 S.W. 929, 942 (Mo.banc 1911).

7. Although "billboard" is an undefined term in the Billboard Law, its plain and ordinary meaning can be derived from its dictionary definition. Thus, a "billboard" is defined as "specifically a large panel designed to carry outdoor advertising and mounted on a building or framework near a road." Merriam-Webster New International Dictionary 215 (3d ed.1976). The Random House Webster's Unabridged Dictionary 207 (2d ed.1998) describes a billboard as a "flat surface or board, usually outdoors, on which large advertisements or notices are posted."

discredit Commission's assertion MoDot had no regulatory authority until the advertising message was affixed.

Finally, such an argument by Commission ignores the following language of the Supreme Court of Missouri:

> "Thus, both the federal and Missouri state governments have recognized that the transportation system, specifically the Interstate System and the primary highway system, is impacted by the effective control of outdoor advertising *structures*. ... And ... an outdoor advertising permit must be obtained from MoDot for placement of a *billboard* within 660 feet of [highway]." (Emphasis supplied.)

*C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 328 (Mo.banc 2000).

■ Based on the cases cited herein and the statutory provisions discussed, we conclude that (1) MoDot and the Commission were empowered to regulate Appellant's "outdoor advertising" before a message was added, and (2) the phrase "outdoor advertising" as used in Missouri's Billboard Law encompassed the subject sign as it existed on August 28, 1999, (even though it lacked advertising on one side). We reject Commission's arguments to the contrary.

We also reject Commission's claim that an increase in the "size or area" of the subject sign occurred (within the meaning of 7 CSR 10–6.060(3)) when an advertising message was put on the east side after August 28, 1999. It was mandatory that MoDot and Commission treat Appellant's V-type sign as *one sign*. This is made clear, as noted above, by the statutory

language found in § 226.540.2(b): "[S]igns may be placed back to back, double-faced, or in V-type construction with not more than two displays to each facing, but such sign structure *shall be considered as one sign* [.]" (Emphasis supplied.) As such, a sign was constructed within the meaning of the Billboard Law within the 120–day time limit specified by the permit even though only the west side contained an advertising message.

We also find that the size of the sign did not increase merely by adding a message to the east side. Size is defined as the "spatial dimensions, proportions, magnitude, or bulk of anything." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1789 (2d ed.1998). As the regulation makes explicitly clear, "size" as it is used in 7 CSR 10–6.060(3)(C) relates to the "outside dimensions of the advertising copy portion of the device" and not to the message itself. It was fully admitted that these dimensions did not increase. Consequently, the Commission erred when it concluded that the size of the sign increased by the addition of the east side message.

■ In so deciding, we do not ignore 23 CFR 750.711 which the Commission claims "bolsters" their argument.[8] Significantly, we note the Commission did not rely upon this federal regulation in its initial decision and order. This is not surprising for two reasons. First, Appellant's outdoor advertising device (a V-type sign structure "considered as one sign," § 226.540.2(b)) had "advertising content" affixed on the west side thereof before the law changed; consequently, 23 CFR 750.711 has no application. Second, this regulation can only avoid ambiguity and direct conflict with

---

8. This regulation provides:
   "Structures, including poles, which have never displayed advertising or informative content are subject to control or removal when advertising content visible from the main-traveled way is added or affixed. When this is done, an 'outdoor advertising sign' has then been erected which must comply with the State law in effect on that date."

previously mentioned "outdoor advertising" regulatory provisions by limiting its application to situations where advertising is added to structures not originally intended as an advertising medium, i.e., walls and roofs of buildings, utility poles, rock bluffs, and the like.[9] We are persuaded that 23 CFR 750.711 has application only in the circumstances described. For this additional reason, the regulation provides no support for the Commission's argument.

Finally, we have not ignored cases relied upon and cited by the Commission. Each case cited by the Commission, however, involved situations wherein the physical structure and size dimensions were increased.[10] That is not our case, i.e., the physical structure and actual area size were never increased. As such, these distinctions render the cases cited by the Commission inapposite.

We hold that the term "outdoor advertising" as used in §§ 226.500–600 includes blank billboards as well as billboards that display advertising. We further hold that a sign is not increased in size by the mere addition of a message being affixed to a billboard when the initial structure is a V-type sign with both sides intended to be used as an advertising medium. As such, the Commission erred as a matter of law when it found otherwise.

The decision of the Commission is reversed.

PREWITT, P.J., and RAHMEYER, C.J., CONCUR.

---

**9.** A cardinal rule of both statutory construction and administrative rule interpretation is that every word, clause, sentence, and section thereof should be harmonized and given meaning unless it conflicts with ascertained legislative intent. *Cub Cadet Corp. v. Mopec, Inc.,* 78 S.W.3d 205, 214–15[9,11] (Mo.App. 2002); *Sermchief v. Gonzales,* 660 S.W.2d 683, 688–89 (Mo.banc 1983).

**10.** *See Hulshof v. Mo. Highway & Transp. Comm'n,* 737 S.W.2d 726 (Mo.banc 1987) (sign increased in size from 128 square feet to

240 square feet); *National Adver. Company v. Mo. Highway & Transp. Comm'n,* 801 S.W.2d 421 (Mo.App.1990) (new addition to the top of the north side of V-type sign increased square footage by 26%); *Western Outdoor Adver. Co. v. Mo. Highway and Transp. Comm'n,* 776 S.W.2d 496 (Mo.App.1989) (new sign added to back of pre-existing sign that doubled the size dimensions); *Overland Outdoor Adver. v. Highway & Transp. Comm'n,* 749 S.W.2d 452 (Mo.App.1988) ("apron" strip added to sign that increased the size by 48 square feet).