**David R. TEAGUE, Appellant,**

v.

**MISSOURI GAMING COMMISSION,
Respondent.**

**No. WD 62468.**

Missouri Court of Appeals,
Western District.

Dec. 30, 2003.

As Modified March 2, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2004.

---

1. It is not necessary for this Court to resolve relators' additional claims that joinder of Cu-

rator Horne was pretensive.

James B. Deutsch, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael W. Bradley, Jefferson City, for Respondent.

Before JOSEPH M. ELLIS, C.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

David R. Teague appeals the decision of the Missouri Gaming Commission (the "Commission") denying his application for a Level I Occupational License ("Level I License") and suspending his Level II Occupational License ("Level II License") for thirty days. He contends that the Commission erred in denying his application for a Level I License and for suspending his Level II License on the basis that he failed to disclose two prior arrests on his applications because such failure was an oversight on his part. The decision of the Commission is affirmed.

### Factual and Procedural History

Mr. Teague is the Vice President of Information Systems for Isle of Capri Casinos, Inc. Isle of Capri is a holding company headquartered in Mississippi that owns several entities in Missouri, which are licensed to operate gaming facilities. Mr. Teague resides and works in Mississippi. He previously applied for and obtained a Level II License from the Commission. In his position as Vice President of Information Systems, Mr. Teague is required to obtain a Level I License.[1] He applied for a Level I License on August 24, 2001.

The Commission sent Mr. Teague a letter on March 8, 2002, informing him that revocation of his Level II License had been proposed for his failure to disclose on his application that he had been charged with possession of drug paraphernalia on September 29, 1991, in Douglas County, Nevada. On March 20, 2002, the Commission notified Mr. Teague that it had denied his application for a Level I License because he failed to disclose the same possession of drug paraphernalia charge and that he had been charged with domestic battery and spousal abuse on January 6, 1991, on his Level I License application.[2] He appealed both the denial of his Level I License and the revocation of his Level II License.

An evidentiary hearing was held before a Commission hearing officer on June 27, 2002. The hearing officer found that under section 313.810.3, RSMo 2000, that although Mr. Teague's conduct in omitting from both applications information regarding the two arrests was not intentional, his negligence in failing to include the information in the application was sufficient to deny his Level I License and suspend his Level II License for thirty days. Additionally, the hearing officer noted that Mr. Teague had been notified by the Louisiana

---

1. One's position in the riverboat gaming operation determines whether a Level I or Level II License is required. *See* 11 CSR 45–4.400.

2. Mr. Teague represents in his brief that both charges were dismissed.

gaming authorities that he had omitted the same two arrests in his Louisiana application four months prior to the preparation of his Level I License application in Missouri. The Commission subsequently adopted the hearing officer's findings of fact and conclusions of law on January 22, 2003. On January 29, 2003, the Commission reopened its decision to amend the hearing officer's decision by deleting the portion of the decision allowing Mr. Teague to reapply for a Level I License thirty days after the date of the decision.[3] In effect, the Commission's amended decision allows Mr. Teague to reapply for a Level I License immediately. This appeal by Mr. Teague followed.

### Points on Appeal

Mr. Teague raises three points on appeal. He claims that the Commission erred in: (1) denying his application for a Level I License; (2) finding that certain information had been omitted from his application for a Level I License because such a finding was unsupported by the evidence; and (3) suspending his Level II License for thirty days.

### Standard of Review

Section 313.840.2, RSMo 2000, governs appellate review of all decisions of the Commission and provides that judicial review of all the Commission's decisions shall be directly to this court. Chapter 313 does not provide the scope of review of the Commission's decisions. "Where there is no specific statute concerning an aspect of judicial review of administrative agency decisions, for example, the scope of review in this case, Chapter 536 operates to 'fill in gaps in administrative procedures.'" *Grace v. Mo. Gaming Comm'n*, 51 S.W.3d 891, 896 (Mo.App. W.D.2001) (quoting *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n*, 24 S.W.3d 243, 245 (Mo.App.2000)). The Administrative Procedures Act, Chapter 536, governs appellate review of the Commission's decision. *Id.; see also State ex rel. Riverside Joint Venture v. Mo. Gaming Comm'n*, 969 S.W.2d 218, 221 (Mo. banc 1998).

Sections 536.100 to 536.140, RSMo 2000, apply to contested cases. *Grace*, 51 S.W.3d at 896. The scope of judicial review in a contested case extends to determination of whether the agency's action was: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) unsupported by competent and substantial evidence upon the whole record; (4) for any other reason, unauthorized by law; (5) made upon unlawful procedure or without a fair trial; (6) arbitrary, capricious, or unreasonable; (7) an abuse of discretion. § 536.140.2, RSMo 2000. Although a reviewing court defers to the administrative agency's findings of fact, when its decision is based upon an interpretation, application, or conclusion of law, the decision is subject to the reviewing court's independent judgment. § 536.140.3, RSMo 2000;[4] *Wells v. Dunn*, 104 S.W.3d 792, 794 (Mo. App. W.D.2003) (citing *Cmty. Bancshares, Inc. v. Sec'y of State*, 43 S.W.3d 821, 823 (Mo. banc 2001)). A reviewing court gives "due weight to the agency's opportunity to observe the witnesses." *Grace*, 51 S.W.3d

---

**3.** Mr. Teague correctly notes in his brief that the Commission failed to change the date of its decision from January 22, 2003, to January 29, 2003. Because Mr. Teague filed his appeal on February 21, 2003, he is within the thirty day time limit for filing an appeal.

**4.** An appellate court may weigh the evidence and determine facts only when the agency's action "being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts[.]" § 536.140.3, RSMo 2000.

at 897 (quoting *Hornsby v. Dir. of Revenue*, 865 S.W.2d 662, 663 (Mo. banc 1993)); § 536.140.3, RSMo 2000.

## I. Denial of Level I License

In his first two points on appeal, Mr. Teague challenges the Commission's denial of his application for a Level I License. He claims that the Commission erred in denying his application for a Level I license based on section 313.812.14(7), RSMo 2000, and 11 CSR 45–4.260(4)(D) because his failure to disclose two arrests on his application was unintentional. He contends that a Level I License may only be denied on the basis of section 313.812.14(7) and 11 CSR 45–4.260(4)(D) when an applicant intentionally omits information or knowingly provides false information on the application. Mr. Teague argues that there is no support for the Commission's legal conclusion that negligence in preparing a Level I License application by failing to include certain information is grounds for denying the license under section 313.812.14(7), RSMo 2000, and 11 CSR 45–4.260(4)(D). Second, Mr. Teague argues that the Commission's finding that he omitted certain information from his Level I License application was not supported by competent and substantial evidence. He asserts that his application contained information from which the Commission could investigate the circumstances surrounding the two arrests and determine that he had been charged with possession of drug paraphernalia and spousal abuse.

## A. Commission's Finding Supported by Substantial and Competent Evidence

■ As a preliminary matter, Mr. Teague's second point on appeal that the Commission's finding that he omitted two arrests from his Level I License application is not supported by the evidence is addressed. Mr. Teague argues that his application contained sufficient information for the Commission to determine that he had been charged with possession of drug paraphernalia and spousal abuse. In support of his argument, Mr. Teague notes that he provided the case information on the drug charge and that he had previously provided the spousal abuse charge information to the Commission on his Level II License application.

With respect to the drug paraphernalia charge, Mr. Teague was arrested on September 29, 1991, for driving under the influence. He was later charged, as part of the same incident that resulted in his arrest, with possession of drug paraphernalia. Mr. Teague claims that he included the case information on the DUI charge in his application. Although he does not contest that he failed to disclose the related possession of drug paraphernalia charge in his application, he asserts that the application only requested information about each incident resulting in arrest and not about each arrest, charge, or conviction associated with that incident. He further argues that he relied on the court documents in his possession, which only listed the DUI charge, in completing this portion of his application.

Under section 313.810.3, RSMo 2000, an applicant for either a Level I or Level II occupational license is responsible for proving to the Commission his suitability for licensure. "It is the burden of the applicant to show by clear and convincing evidence his suitability as to character, experience and other factors as may be deemed appropriate by the commission." § 313.810.3, RSMo 2000. The Commission bares no burden to demonstrate that an applicant is suitable. The burden is entirely the applicant's to prove suitability for licensure. The applicant's burden is

emphasized on the first page of the Level I License application which contains the following warning:

> Each question must be answered fully, accurately, and completely. Any misrepresentation or omission can result in application denial. When information is unknown, so indicate. You must make a substantial inquiry to determine the answers to all questions. Any statement that is not true or not disclosed, which becomes known at any later date, is cause for revocation of the Riverboat Gaming License.

An applicant can prove suitability, *inter alia*, only by fully and completely providing all the information requested on the application.

Mr. Teague claims that the application requested only information about each incident in which he had been arrested, convicted, charged, etc. and not about each individual arrest, charge, etc. associated with that case. This is a distinction without merit. The burden was on Mr. Teague to answer fully, accurately, and completely each question on the application. Mr. Teague also claims that the court documents that he relied on did not list the possession of drug paraphernalia charge. He implies that he was unaware of the possession of drug paraphernalia charge. However, the evidence at trial established that the Louisiana gaming officials notified Mr. Teague approximately four months before he completed his Level I License application in Missouri that he had omitted the possession of drug paraphernalia charge on his Louisiana application. Additionally, Cpl. Rex Scism of the Missouri Highway Patrol testified that Mr. Teague denied that he had ever been charged with any drug-related offenses. Only when Cpl. Scism confronted him with his knowledge of the possession of drug paraphernalia charge did Mr. Teague state his failure to include the charge on his application was an oversight.

Mr. Teague concedes that he did not include information in his Level I License application regarding the spousal abuse charge. Nevertheless, he argues that the Commission was aware of this charge because it already had information in its possession about it. Specifically, Mr. Teague had reported the incident to the Commission in his Level II License application.

Contrary to Mr. Teague's claim, the Commission does not have a duty to compare his prior Level II application with his Level I applicant in order to discover that he failed to include information contained in his prior Level II application. As stated, the burden is Mr. Teague's to prove his suitability for a license by fully and accurately completing each question on the application, including the questions regarding arrests, charges, and convictions.

None of Mr. Teague's arguments concerning the omission of either arrest is availing. Substantial evidence supports the Commission's finding that Mr. Teague failed to disclose the possession of drug paraphernalia charge and the spousal abuse charge on his Level I application. Point two is denied.

### B. Denial of Level I License For Violating § 313.812.14(7) and 11 CSR 45–4.260(4)(D)

Mr. Teague's first point challenges the Commission's denial of his Level I License application for violating section 313.812.14(7), RSMo 2000, and 11 CSR 45–4.260(4)(D) by having omitted certain information on his application. He claims that the Commission's denial of his Level I License was "arbitrary and capricious, constituted an abuse of discretion and was unauthorized by the law." Mr. Teague argues that the Commission misapplied the legal standard outlined in section

313.812.14(7), RSMo 2000, and 11 CSR 45–4.260(4)(D). He claims that a Level I License may only be denied under either legal authority when an applicant intentionally omits certain information or knowingly makes false statements on his application. Because the Commission's decision contains a finding that Mr. Teague did not intentionally omit such information from his application, he claims that the Commission's legal authority for denying his Level I License does not support its decision.

The Commission denied Mr. Teague's application for a Level I License because he violated section 313.812.14(7), RSMo 2000, and 11 CSR 45–4.260(4)(D) in omitting a possession of drug paraphernalia charge and a spousal abuse charge on his Level I License application.[5] Section 313.812.14(7), RSMo 2000, provides, in relevant part:

> A holder of any license shall be subject to imposition of penalties, suspension or revocation of such license, or if the person is an applicant for licensure, the denial of the application, for any act or failure to act by himself or his agents or employees, that is injurious to the public health, safety, morals, good order and general welfare of the people of the State of Missouri, or that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri unless the licensee proves by clear and convincing evidence that it is not guilty of such action. . . . [T]he following acts

or omissions may be grounds for such discipline:

> (7) Use of fraud, deception, misrepresentation or bribery in securing any permit or license issued pursuant to sections 313.800 to 313.850;

The regulation, 11 CSR 45–4.260(4)(D) reads:

> The Commission may refuse an occupational license to any person or revoke an occupational license of any person–
>
> (D) Who fails to disclose or states falsely information called for in the application process or uses fraud, deception, misrepresentation, or bribery in securing a permit or license issued under the Riverboat Gambling Act;

A key distinction between the statute and the regulation is its terminology. Section 313.812.14(7) speaks in terms of fraud, deception and misrepresentation, all terms that connote intentional wrongdoing.[6] The regulation is not so limiting. Rather, it provides that the Commission may deny a Level I License to any applicant "who fails to disclose . . . information called for in the application process." 11 CSR 45–4.260(4)(D).

■■■■ The regulation does not define the phrase "fails to disclose." The same principles of construction are used in interpreting regulations as in interpreting statutes. *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 767 (Mo. App. E.D.1999) (citing *Trumble v. Dir. of*

---

5. It is important to note that the Commission adopted Resolution No. 02–016 on March 15, 2002, denying Mr. Teague a Level I License. The Resolution states that the basis for the denial was section 313.812.14(7) and 11 CSR 45–4.260(4)(D). The Executive Director of the Commission sent a letter to Mr. Teague on March 20, 2002, stating that the reason for the denial was 11 CSR 45–4.260(4)(D).

6. *See Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 588 (Mo.App. W.D.2000) (fraud is a question of intent); *State ex rel. Nixon v. Telco Directory Publ'g*, 863 S.W.2d 596, 600 (Mo. banc 1993) (defining deception in consumer protection context as requiring intent); *Hernandez v. State Bd. of Registration for Healing Arts*, 936 S.W.2d 894, 899 n. 3 (Mo.App. W.D. 1997) (defining misrepresentation in the context of professional licensure as requiring intent).

*Revenue,* 985 S.W.2d 815, 819 (Mo.App. E.D.1998)). In the absence of a definition in the regulation, the words will be given their plain and ordinary meaning as derived from a dictionary. *State v. Belton,* 108 S.W.3d 171, 175 (Mo.App. W.D.2003) (citing *State v. Eisenhouer,* 40 S.W.3d 916, 919–20 (Mo. banc 2001)); *see also Natural Res., Inc. v. Mo. Highway & Transp. Comm'n,* 107 S.W.3d 451, 453 (Mo.App. S.D.2003) (citations omitted) ("The ordinary meaning of a word is usually derived from the dictionary when a word used in a statute or regulation is not defined therein."). "Fail" is defined as "[f]ault, negligence, or refusal." BLACK'S LAW DICTIONARY 594 (6th ed.1990). Black's Law Dictionary defines "disclose" as "[t]o bring into view by uncovering; to expose; to make known; to lay bare." *Id.* at 464. Under 11 CSR 45–4.260(4)(D), an applicant may be denied a Level I License for negligence in not uncovering or exposing certain information requested in the application.

The phrase "fails to disclose" is not modified, moreover, by the word "intentional." In the absence of such a modification, interpreting the regulation requires following its plain and ordinary meaning. Under the dictionary definition of "fails" and "disclose," an applicant can be negligent in failing to disclose information on the application. Because the phrase "fails to disclose" is not specifically limited by the term "intentional," a negligent failure to disclose may be grounds for the Commission to deny a Level I License.

Mr. Teague neither disputes the Commission's authority to promulgate 11 CSR 45–4.260(4)(D) nor contends that the regulation is invalid or that it conflicts with section 313.812.14(7). The Commission promulgated the regulation pursuant to sections 313.004 and 313.805, RSMo 2000.[7] Section 313.004 establishes the Gaming Commission and its operations. *Termini v. Mo. Gaming Comm'n,* 921 S.W.2d 159, 161 (Mo.App. W.D.1996). "The commission shall perform all duties and have all the powers and responsibilities conferred and imposed upon it relating to excursion gambling boats...." § 313.004.4, RSMo 2000. Under section 313.805, RSMo 2000, the Commission has the power to "promulgate rules and regulations to implement sections 313.800 to 313.850." Among other powers granted to the Commission in this statutory section is the power "[t]o take any other action as may be reasonable or appropriate to enforce sections 313.800 to 313.850 and the commission rules." § 313.805(19), RSMo 2000. Both statutes provide authority for the Commission to promulgate the portion of 11 CSR 45–4.260(4)(D) that states "[t]he Commission may refuse an occupational license to any person ... [w]ho fails to disclose ... information called for in the application process."

Mr. Teague contends that the Commission's decision establishes a procedural standard that allows the Commission to deny a Level I License to an applicant simply for failure to complete the application without error. Under section 313.810.4, RSMo 2000, "[b]efore a license is granted, the commission shall conduct a thorough investigation of the applicant for a license to operate a gambling game operation on an excursion gambling boat. An applicant shall provide information on a form as required by the commission." Even though section 313.810.4, RSMo 2000, specifically includes applications for licenses to operate a gambling boat, the legislature's intent in enacting the statute

---

7. Mr. Teague's contention that section 313.812.14(7), RSMo 2000, is the authorizing statute for 11 CSR 45–4.260(4)(D) is incorrect.

was that it apply to all licenses referred to in section 313.810.1, RSMo 2000, which are applicable to operating a gambling boat, including occupational licenses. Section 313.810.1 provides "[a]person shall not be issued a license to conduct gambling games on an excursion gambling boat or a license to operate an excursion gambling boat, an occupational license or a supplier license unless the person has completed and signed an application on the form prescribed and published by the commission." Section 313.810.1, RSMo 2000, specifically mentions several licenses affiliated with gambling boat operations including occupational licenses and requires and applicant to complete and sign the requested form before being granted a license. Section 313.810.4, RSMo 2000, provides for an investigation of the applicants. For the legislature to have intended that persons required under section 313.810.1, RSMo 2000, to apply for an occupational license not to be included for investigation would be illogical. The legislature is presumed, when enacting a statute, to intend a logical result, and courts endeavor to avoid unreasonable and illogical results. *Murray v. Mo. Highway & Transp. Comm'n*, 37 S.W.3d 228, 234 (Mo. banc 2001). The legislature intended the praise "license to operate a gambling game operation" in section 313.810.4, RSMo 2000, to encompass all licenses mentioned in section 313.810.1, RSMo 2000. Section 313.810.4, RSMo 2000, applies to occupational licenses.

■ Thus, the clause in 11 CSR 45–4.260(4)(D) stating that applicants "[w]ho fail[ ] to disclose...information called for in the application process..." may be refused an occupational license, is sanctioned by section 313.810.4, RSMo 2000. As a rule, an administrative agency may not promulgate a regulation that is broader than the authorizing statute. *Pen–Yan*

*Inv., Inc. v. Boyd Kansas City, Inc.*, 952 S.W.2d 299, 304 (Mo.App.W.D.1997) (citing *Hearst Corp. v. Dir. of Revenue*, 779 S.W.2d 557, 559–60 (Mo. banc 1989); *Termini*, 921 S.W.2d at 161). The regulation does not authorize the Commission to do more than does section 313.810.4, RSMo 2000, i.e., require that an applicant provide accurate and material information on the application. 11 CSR 45–4.260(4)(D) does not exceed the authority granted to the Commission simply because it allows the Commission to deny an occupational license when an applicant fails to disclose material information called for in the application process. Rather, the regulation reinforces the Commission's authority to promulgate implementing chapter 313. See §§ 313.004, RSMo 2000; 313.805, RSMo 2000. The regulation expresses, moreover, the intent of the legislature in enacting section 313.810.4 which was to allow the Commission to deny an occupational license for an applicant's failure to disclose material information on the application.

As discussed above, the burden is on the applicant to demonstrate suitability for the granting of a Level I License. § 313.810.3, RSMo 2000. Inherent in the authority to require material information is the authority to insist that the required information be accurate. An applicant can prove suitability only by completely and fully disclosing all material information sought on the Level I License application. In this case, Mr. Teague's failure to include two arrests on his application pertains to material information. The Commission denied his application for failing to include two arrests material to the granting of his application, a possession of drug paraphernalia charge and a spousal abuse charge. The authority to seek from an applicant material information to the applicant's suitability for licensure necessarily entails the requirement that the information be accu-

rate. To reverse the Commission for its denial of the requested license when information material to the applicant's suitability is omitted from the application form would be absurd in light of the statute's mandate that the burden is on the applicant to prove his suitability. § 313.810.3, RSMo 2000. The Commission did not err in denying Mr. Teague's Level I application on the basis of 11 CSR 45–4.260(4)(D).

■■ Having found that the Commission's denial of Mr. Teague's Level I License on the basis of 11 CSR 45–4.260(4)(D) was not error, Mr. Teague's remaining contention that the Commission erred in relying on section 313.812.14(7) in denying his application need not be addressed. That a reviewing court is primarily concerned with the correctness of the result, not the route taken by trial court to reach it is a well-established principle. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 22 (Mo. banc 2003) (citing *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92, 94 (Mo.App.1992)). "A court-tried case that reaches a correct result will not be reversed even if the trial court gives a wrong or insufficient reason for its judgment." *Puisis v. Puisis,* 90 S.W.3d 169, 173 n. 7 (Mo.App. E.D.2002) (citing *Holdener v. Fieser,* 971 S.W.2d 946, 950 (Mo.App. E.D.1998)). A ruling should be affirmed if the result is correct on any tenable basis. *Thompson v. St. John,* 915 S.W.2d 350, 361 (Mo.App. S.D.1996) (citing *Reed v. Reberry,* 883 S.W.2d 59, 61 (Mo. App. S.D.1994)). The same rule of law applies to the Commission's decision.

The Commission's denial of Mr. Teague's Level I License was not arbitrary and capricious, an abuse of discretion, or unauthorized by law. Substantial evidence existed to support its decision that Mr. Teague violated 11 CSR 45–4.260(4)(D). Point one is denied.

## II. Suspension of Level II License

■ Mr. Teague's third point on appeal challenges the Commission's suspension of his Level II License for violating 11 CSR 45–4.260(4)(D) by omitting his arrest for possession of drug paraphernalia on his application. He argues that the Commission's suspension of his Level II License was "arbitrary and capricious, constituted an abuse of discretion and was unauthorized by the law." Mr. Teague claims that the Commission erred in suspending his Level II License on this legal basis because his failure to include the possession of drug paraphernalia charge was unintentional. He asserts that the Commission erred in its legal conclusion that a Level II License can be suspended on the basis that certain information was unintentionally or negligently omitted from the application. He asserts the same arguments regarding 11 CSR 45–4.260(4)(D) under his third point on appeal as he did under point one.

The Commission has the authority to assess penalties against a licensee including suspension or revocation of his license. § 313.805(6), RSMo 2000. Under 11 CSR 45–4.260(4)(D), the Commission has the authority to revoke the occupational license of any person "[w]ho fails to disclose ... information called for in the application process...." As discussed under section I.B. of this opinion, the phrase "fails to disclose" includes negligence. Section 313.812.14(1) provides, in pertinent part, that a licensee may be subject to suspension of his license for "[f]ailing to comply with or make provision for compliance with sections 313.800 to 313.850, the rules and regulations of the commission...." In this case, Mr. Teague failed to comply with 11 CSR 45–4.260(4)(D) by negligently failing to disclose the possession of drug paraphernalia charge on his Level II License application.

Mr. Teague had an ongoing responsibility to keep his Level II application current. Under section 11 CSR 45–4.260(5), "[t]he applicant shall notify the commission in writing within ten (10) days of any changes to any response in the application *and this obligation shall continue throughout any period of licensure granted by the commission.*" (emphasis added). Mr. Teague's obligation included providing the Commission with correct material information relating to his suitability for licensure. After the Louisiana gaming authorities notified Mr. Teague of his failure to include the possession of drug paraphernalia charge on his Louisiana occupational license application, Mr. Teague was reminded of the charge. Mr. Teague's obligation included reviewing his Missouri Level II License application to determine if a similar discrepancy existed. Mr. Teague's failure to initially include the charge in his Level II License application coupled with his failure to amend his application are sufficient grounds for the Commission to suspend his Level II License for thirty days.

The Commission did not err in suspending Mr. Teague's Level II License on the basis of 11 CSR 45–4.260(4)(D). The Commission's decision was not arbitrary and capricious, an abuse of discretion, or unauthorized by law. Point three is denied.

For the reasons stated in the opinion, the decision of the Commission is affirmed.

All concur.