**Treva GAGE, and Shari Douglas, Appellants,**

v.

**MISSOURI GAMING COMMISSION, Respondent.**

Nos. WD 64935, WD 64936.

Missouri Court of Appeals, Western District.

May 30, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

Application for Transfer Denied Sept. 26, 2006.

David G. Brown, Finley D. Gibbs, Co-Counsel, Columbia, for appellants.

Sharon K. Euler, Kansas City, for respondent.

Before HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

LISA WHITE HARDWICK, Judge.

Treva Gage and Shari Douglas appeal from the final order of the Missouri Gaming Commission ("Commission"), which revoked their occupational gaming licenses and resulted in the termination of their employment at a casino. Finding no error in the Commission's determination, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Gage and Douglas were employed by the Isle of Capri Casino ("Casino"), a licensed gambling boat located in Boonville, Missouri. Gage was the Casino's manager of management information systems (MIS) and held a "Level I Gaming License." Douglas was employed as the senior MIS support specialist and held a "Level II Gaming License." Both employees had access to the Casino's information technology (IT) room, where computer hardware was located and a surveillance camera recorded the ingress and egress of all persons.

On July 28, 2003, a third employee, Denise Wilson, covered the lens of the surveillance camera in the IT room, purportedly as a prank to see how long it would take the Casino security officers to notice it. Douglas was present when the camera was covered. The camera remained covered for thirty-three minutes.

That same day, Douglas telephoned Gage regarding the camera incident and asked what she should do if questioned by security officers. Gage told Douglas to tell security that Gage had been changing her clothes in the IT Room and forgot to uncover the camera when she finished. The purpose of the fabricated story was to protect Douglas from losing her job.

The Casino's surveillance manager and a Missouri Highway Patrol officer began investigating the camera incident on July 29, 2003. Douglas told the investigators that Gage had been changing clothes in the IT room and forgot to uncover the camera. Gage confirmed the story. Four days later, both women admitted the fabrication and told the investigators about the prank.

Following the investigation, the Missouri Gaming Commission issued preliminary disciplinary orders, notifying Gage and Douglas that their gaming licenses were

subject to revocation. The orders alleged that the licensees had violated the Missouri gaming laws, Sections 313.800 to 313.850, RSMO 2000, and related regulations by: (1) knowingly making false statements to Commission agents concerning the camera incident; and (2) failing to prevent the incident from occurring or promptly notifying the Commission that such violations had occurred.

A hearing was held, at the request of Gage and Douglas, at which the Commission presented evidence in support of the allegations in the preliminary disciplinary orders. Gage and Douglas appeared with counsel but did not testify or present evidence.

At the conclusion of the hearing, the hearing officer recommended revocation of the gaming licenses held by Gage and Douglas. The Commission later adopted and affirmed the hearing officer's findings of fact, conclusion of law, and final order of revocation. Gage and Douglas have appealed, raising six points of error.

## II. STANDARD OF REVIEW

Section 313.840[1] governs appellate review of all decisions of the Commission. *Teague v. Mo. Gaming Comm'n*, 127 S.W.3d 679, 682 (Mo.App.2003). Judicial review is directly to this court, and the scope of review is governed by Chapter 536 of The Administrative Procedures Act. *Id.*

■ Our review of the Commission's decision is limited to determining whether it is: in violation of constitutional provisions; in excess of its statutory authority or jurisdiction; unsupported by competent and substantial evidence; unauthorized by law; made upon unlawful procedure or

without a fair trial; arbitrary, capricious, or unreasonable; or if it involves an abuse of discretion. *Grace v. Mo. Gaming Comm'n*, 51 S.W.3d 891, 896–97 (Mo.App. 2001); Section 536.140.2 RSMo. (Cum. Supp.2005). We must defer to the Commission's findings of fact, but questions of law are reviewed *de novo*. *President Riverboat Casino v. Mo. Gaming Comm'n*, 142 S.W.3d 747, 749 (Mo.App.2004); Section 536.140.3 RSMo. (Cum.Supp.2005).

## III. POINTS ON APPEAL

### A. Sufficiency of Notice

■ In Point I, Gage and Douglas contend the Commission erred in revoking their gaming licenses because the preliminary disciplinary order provided inadequate notice of the specific administrative charges and thereby deprived the licensees of due process and a fair hearing. Similarly, the licensees argue in Point II that the notice was improper because the final revocation decision was based on statutory violations that were not previously alleged.

In the preliminary disciplinary order, the Commission notified Gage and Douglas that their licenses were subject to revocation based on an incident in which a surveillance camera in the Casino's IT room was improperly covered with a piece of white paper. The order alleged that both licensees had engaged in the following misconduct:

> During an investigation of this incident, [Gage and Douglas] knowingly made false statements of material fact to Commission agents concerning the incident. [Gage and Douglas] failed to prevent the incident from occurring or promptly notify the Commission that a violation of law or regulations had been committed.

---

**1.** All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

The preliminary order further notified the licensees that their conduct violated Section 313.830.4(15)[2] and Section 313.812.14(1) of the gaming laws, and 11 CSR 45–4.260(4)(E) and (Q) and 11 CSR 45–10.030 of the gaming regulations. Those laws and regulations allow the revocation of an occupational license if the licensee:

(1) "[k]nowingly makes a false statement of any material fact to the commission, its agents or employees." Section 313.830.4(15);

(2) acts in a manner "injurious to the public health, safety, morals, good order and general welfare of the people of the state of Missouri, or that would discredit or tend to discredit the Missouri gaming industry[,]" including failure to comply with the rules and regulations of the Commission or any federal, state, or local laws or regulations or dishonesty in the performance of duties under the Excursion Gaming Boat Regulations. Section 313.812.14(1) and (9); 11 CSR 45–4.260(4)(E) and (Q).

(3) fails to report violations of law, minimum internal control standards or commission rules; fails to prevent improper or unlawful conduct upon the licensed premises; or fails to report events on the premises they knew or should have known to be illegal. 11 CSR 45–10.030.

The preliminary order did not provide a full text recitation of these laws and regulations. Citing *McCall v. Goldbaum*, 863 S.W.2d 640, 642–43 (Mo.App.1993), Gage and Douglas contend the preliminary disciplinary order did not satisfy due process notice requirements because it merely summarized the alleged facts and provided abstract citations to statutes and administrative regulations. The licensees assert the notice must "specify" the charge to avoid confusion over how their conduct might have violated the law. *Brixey v. Personnel Advisory Bd.*, 607 S.W.2d 825, 827 (Mo.App.1980).

We note that neither *McCall* nor *Brixey* actually require a full text recitation of each regulatory provision upon which disciplinary action is based. As recognized in *Brixey*, each case must be considered on its facts to determine if the disciplinary notice was sufficient for the employee to be able to prepare for examination of witnesses and presentation of evidence. 607 S.W.2d at 828.

In *Brixey*, the court reversed the termination of an employee where the notice of dismissal did not provide specific incidents of misconduct and did not set forth all of the grounds for termination that were ultimately found after a hearing by the Personnel Advisory Board. *Id.* at 828. In *McCall*, the dismissal letter accused an employee of three work-related offenses, only one of which was punishable by dismissal. *McCall*, 863 S.W.2d 640. The Personnel Advisory Board upheld the dismissal based on an infraction that was not referenced in the dismissal letter. *Id.* at 642–43. The court found McCall had not received adequate notice of the dismissal grounds and reversed the Board's decision. In both of these cases, the employee dismissals were approved by the administrative appeal agency on grounds that were not articulated in the preliminary disciplinary notice. The judicial reversals were based on the fact that the employees were essentially found guilty of offenses for

**2.** All remaining statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

which they had never been charged. *Id.; Brixey,* 607 S.W.2d at 828.

Gage and Douglas have failed to show that similar circumstances exist in this case. The preliminary disciplinary order provided detailed factual allegations that the licensees made material false statements during the investigation of the camera incident and failed to prevent the incident from occurring or promptly report it. The order listed specific statutes and regulations that were violated by this misconduct. Following the administrative hearing, the Commission issued a final order that imposed disciplinary action for the same misconduct and violations referenced in the preliminary order. The final order stated:

> [Gage and Douglas] admitted to the agreed-upon-fabrication of a story to hide the truth about disabling the camera ... *[Gage and Douglas] violated the good order of the gaming industry by providing false information to the Commission's investigator.* [Gage and Douglas] did not take the responsibility required of a holder of an occupational license to comply with the law. Such acts of dishonesty discredit the gaming industry. [Gage and Douglas] failed to carry their burden to show by clear and convincing evidence that their acts should preclude the Commission from revoking their licenses.

> Furthermore, working in a highly regulated industry, [Gage and Douglas] knew or should have known that surveillance cameras serve a very important function. Covering and disabling a surveillance camera provides reasonable grounds to believe that a violation of law may have occurred ... *[Gage and Douglas'] failure to promptly report to the Commission this event of covering a surveillance camera violates the law.*

(emphasis added). These were the only two violations cited in the final order. Each violation independently provided legal grounds for the revocation. Although the order references other misconduct that could have been charged, such as tampering with a surveillance camera, none of that conduct was cited as grounds for the revocation decision.

The Commission's final order of revocation was based solely on the factual and legal grounds alleged in the preliminary disciplinary order. No due process violation occurred, as the licensees had sufficient notice to prepare a defense to the specific charges of misconduct. Points I and II are denied.

## B. Jurisdiction

In Points III and IV, Gage and Douglas contend the Commission lacked statutory authority to regulate matters regarding the Casino's surveillance camera; therefore, they assert the Commission had no jurisdiction to revoke their occupational gaming licenses for camera-related misconduct.

Section 313.805 grants the Commission full supervisory jurisdiction over "all gambling operations" authorized by Missouri law. Gage and Douglas argue that this statutory authority recognizes a distinction between regulated gaming issues and a casino's internal business issues. They further contend that the camera incident in the IT room occurred outside the scope of the gambling operations at the Isle of Capri Casino and, therefore, outside the regulatory sphere of the Commission. For example, they point out that none of the gaming statutes or regulations required the Casino to maintain a surveillance camera in the IT room. Accordingly, the licensees claim that any misconduct related to the camera was an internal business matter between the Casino and its employ-

ees, not a licensing issue for the Commission.

■ We reject this claim because, regardless of whether the Commission had authority to regulate the IT room surveillance camera, it clearly had jurisdiction over the conduct of Gage and Douglas as occupational licensees. Section 313.812.14 provides in relevant part:

> A holder of any [gaming] license shall be subject to imposition of penalties, suspension or revocation of such license . . . for any act or failure to act . . . that is injurious to the public health, safety, morals, good order and general welfare of the people of the state of Missouri, or that would discredit or tend to discredit the Missouri gaming industry or the state of Missouri unless the licensee proves by clear and convincing evidence that it is not guilty of such action. *The Commission shall take appropriate action against any licensee who violates the law or the rules or regulations of the Commission.*

(emphasis added). The Commission's disciplinary authority extends to misconduct outside the workplace under certain circumstances, but it specifically applies when a licensee makes false statements to the Commission or its agents. 11 CSR 45–4.260.4(E), (N), and (Q); 11 CSR 45–10.030(3). Thus, no matter where the false statements were made or what aspects of the Casino business they related to, the Commission had jurisdiction to revoke the licenses held by Gage and Douglas. Points III and IV are denied.

### C. Surveillance Camera Policies and Regulations

In their final two points, Gage and Douglas contend the Commission erred in revoking their occupational licenses based on unpromulgated rules and vague regulations concerning the use of surveillance cameras. Specifically, in Point V, they argue the Commission's general policy of requiring cameras in all casino IT rooms was void because it failed to comply with the administrative rulemaking procedures in Section 536.021, RSMO Cum.Supp.1992. Point VI asserts that the Commission's security and surveillance regulations in 11 CSR 45–7.040(1) are too vague for enforcement because they do not warn licensees that IT room surveillance cameras are regulated by the Commission.

■ Neither point provides grounds for reversal because the Commission's revocation decision was not based on its policies or regulations concerning the use of surveillance cameras. As fully discussed *supra*, the final order provided two independent grounds for disciplinary action: (1) the licensees made false statements to Commission agents during a misconduct investigation; and (2) the licensees failed to report conduct which they knew to be improper or unlawful.[3] The Commission did not seek to enforce any rules regarding surveillance cameras and, thus, the validity of such policies and regulations has no relevance to the discipline imposed. Points V and VI are denied.

### IV. CONCLUSION

The Commission's final order is affirmed.

All concur.

---

3. The licensees may or may not have known about specific rules concerning the surveillance camera, but they certainly knew or should have known that covering the security device was improper. Thus, regardless of the validity of the underlying rules, the licensees had an obligation to report the incident.